J-S16003-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVEN TYLER KOHR | : | |
| | : | |
| Appellant | : | No. 1252 MDA 2018 |

Appeal from the Judgment of Sentence Entered January 23, 2018
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0003593-2016

BEFORE:  OTT, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED JUNE 14, 2019**

Deven Tyler Kohr appeals from the judgment of sentence imposed January 23, 2018, in the Cumberland County Court of Common Pleas, made final by the denial of post-sentence motions on July 5, 2018.  The trial court sentenced Kohr to an aggregate term of 22 to 45 years' imprisonment, following his jury conviction of third-degree murder, endangering the welfare of a child ("EWOC"), and simple assault, for his role in the death of his six-month-old daughter in May of 2016.  On appeal, Kohr challenges the sufficiency of the evidence supporting his convictions and the discretionary aspects of his sentence.  For the reasons below, we affirm.

The facts underlying Kohr's arrest and conviction are summarized by the trial court as follows:

> On May 14, 2016, Deven Tyler Kohr [] called 911 after finding his daughter, six-month-old Desirae Kohr, unresponsive and not breathing.  When police arrived, Kevinlee Kirsch, Desirae's

grandfather, was in the process of administering CPR. Desirae was transported to Harrisburg Hospital by ambulance, along with [Kohr]. At the hospital, Desirae never regained consciousness, and was declared dead.

Two days prior to her death, on May 12, 2016, [Kohr] and Paula Kirsch, Desirae's mother, noticed that Desirae seemed to be ill. Specifically, Desirae was sleeping more than normal and vomiting. Paula took her to a physician who advised her it was likely a "bug." The physician instructed Paula to keep Desirae hydrated with Pedialyte.

Even though Desirae was sick, Paula decided to travel to New Jersey the day following Desirae's doctor's appointment, as earlier in the year she had made plans to celebrate her sister's twenty-first birthday in Atlantic City that weekend. While initially reluctant to follow through with her plans, she ultimately did go, and left her children in [Kohr's] care. Paula's decision to go to Atlantic City upset [Kohr] for various reasons, including his concerns of potential infidelity; however, he insisted on watching the children.

On the evening of May 14, 2016, [Kohr] called Paula to inform her that Desirae was not breathing. Paula told [Kohr] to call an ambulance and left New Jersey for Pennsylvania almost immediately. While en route to Pennsylvania, Paula was unable to contact [Kohr] despite numerous attempts; she then tried calling Kevinlee, who was unreachable due to an uncharged cell phone battery. Eventually, Paula contacted Josh, her sister's boyfriend, who in turn informed Kevinlee what had happened. While the three men — [Kohr], Kevinlee, and Josh — were in the home at the time of the event, [Kohr] was the only adult present in the room when Desirae became unresponsive.

Matthew Stoner, the Chief Deputy Coroner for the Cumberland County Coroner's Office, responded to Harrisburg Hospital, where he pronounced Desirae de[a]d from her injuries. The family was subsequently instructed not to remove the endotracheal tube inserted in Desirae's mouth, even though she was no longer alive; [Kohr] removed it anyway. After talking to the family, members of the New Cumberland Borough Police Department and the coroner returned to the house to attempt to develop a better understanding of what had happened prior to Desirae's death. While in the home, officers found unopened Pedialyte on the kitchen counter. Upon noticing the unopened

bottle, [Kohr] reached for the bottle to attempt to open it, but was stopped by one of the officers. [Kohr] then told law enforcement that he had given Desirae a Pedialyte popsicle, instead of the actual Pedialyte.

Dr. Wayne Ross, a forensic pathologist with the Cumberland County Coroner's Office, performed an autopsy on Desirae's body. Dr. Ross concluded, within a reasonable degree of medical certainty, that her death was caused by suffocation or traumatic asphyxiation. While performing the autopsy, Dr. Ross found rib impressions on Desirae's liver, as well as congestion or bleeding, suggesting her chest was compressed down to her liver before she died. He also found bleeds in her head that ranged from zero to eight days old. These bleeds were consistent with injuries from high forces of deceleration from actions such as throwing the child into the bed. Dr. Ross further testified that traumatic brain injury could be the cause of nausea and vomiting, and that there was no indication that Desirae was ill.

Sergeant Caroline Weber interviewed the family members individually after Desirae's death. Upon being confronted with the autopsy report and cause of death, [Kohr] revealed to Sergeant Weber that he dropped Desirae in her swing and she hit her head. He said that he then picked her up and squeezed her. [Kohr] said that he thought that "the squeezing of her is what did it to her." However, Dr. Ross testified that this explanation was neither scientifically nor medically possible.

Trial Court Opinion, 7/5/2018, at 1-3 (footnotes with record citations omitted).

Kohr was arrested and charged with murder (first and third degree), aggravated assault, EWOC, and simple assault.[1] The case proceeded to a jury trial, and, on November 3, 2017, the jury found him guilty of third-degree murder, EWOC, and simple assault.[2] With regard to the charge of EWOC, the

---

[1] **See** 18 Pa.C.S. §§ 2502(a) and (c), 2702(a)(1), 4304(a)(1), and 2701(a)(1), respectively.

[2] The jury found Kohr not guilty of first-degree murder and aggravated assault.

- 3 -

jury specifically determined Kohr was guilty of engaging in a "course of conduct."[3] Verdict Sheet, 11/3/2017. On January 23, 2018, the trial court sentenced Kohr as follows: (1) on the count of third-degree murder, a term of 20 to 40 years' imprisonment; (2) on the count of endangering the welfare of a child, a consecutive term of two to five years' imprisonment; and (3) on the count of simple assault, a concurrent term of one to two years' imprisonment.

Kohr filed a timely post-sentence motion in which he (1) challenged the sufficiency of the evidence supporting his convictions, (2) asserted the Commonwealth committed prosecutorial misconduct and deprived him of a fair trial, and (3) requested the court modify or reconsider his sentence. Following argument on March 2, 2018, the trial court entered an order finding Kohr's prosecutorial misconduct and fair trial claims waived. *See* Order, 3/2/2018. After reviewing briefs by the parties on the remaining issues, the

---

[3] At the time Kohr committed the offense, EWOC was graded as a first-degree misdemeanor, unless there was a "course of conduct of endangering the welfare of a child," in which case, the grade of the crime increased to a third-degree felony. *See* 18 Pa.C.S. § 4304(b) (2006, Nov. 29, P.L. 1581, No. 179, § 1, effective 1/29/2007). The grading portion of the statute was amended effective August 28, 2017, to provide multiple bases for increasing the grade of the offense, including subsection (b)(2) which increases the grade by one if the child "was under six years of age." 18 Pa.C.S. § 4304(b)(2).

trial court entered an order and opinion on July 5, 2018, denying Kohr's post-sentence motions.  This appeal follows.[4, 5]

We will first address Kohr's contention that the evidence was insufficient to support his convictions.[6]  Our standard and scope of review is well-settled:

> In reviewing the sufficiency of the evidence, we view all evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the fact finder] to find every element of the crime beyond a reasonable doubt.  This standard is equally applicable to cases where the evidence

---

[4] We note Kohr filed his post-sentence motion on February 2, 2018.  Therefore, pursuant to Pa.R.Crim.P. 720(B)(3)(a), the trial court was obligated to decide the motion within 120 days, or by June 2, 2018.  Since that day was a Saturday, the court had until Monday, June 4, to rule upon Kohr's motion.  Rule 720 further provides that "[i]f the judge fails to decide the motion within 120 days, or to grant [a 30-day] extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law."  Pa.R.Crim.P. 720(B)(3)(a).  When that happens, the clerk of courts is required enter an order denying the motion, and serve it upon the defendant, as notice that his 30-day appeal period has begun to run.  *See* Pa.R.Crim.P. 720(B)(3)(c).

In the present case, the trial court did not grant a 30-day extension, and the clerk of courts did not enter an order denying Kohr's motion by operation of law.  Rather, on July 5, 2018, the court entered the order denying Kohr's post-sentence motion, and Kohr filed a notice of appeal within 30 days of that order.  Ordinarily, Kohr's appeal would be untimely.  However, because the clerk of courts did not enter an order denying his post-sentence motion by operation of law, "a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances." *Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa. Super. 2003).

[5] On July 31, 2018, the trial court ordered Kohr to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Kohr complied with the court's directive, and filed a concise statement on August 21 2018.

[6] We have reordered Kohr's claims as presented in his brief for ease of disposition.

is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty."

Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact finder; if the record contains support for the convictions, they may not be disturbed.

***Commonwealth v. Stokes***, 78 A.3d 644, 649 (Pa. Super. 2013) (citations omitted).

Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence.

***Commonwealth v. Estepp***, 17 A.3d 939, 943–944 (Pa. Super. 2011) (citations omitted).

***Commonwealth v. Patterson***, 180 A.3d 1217, 1229–1230 (Pa. Super. 2018).

Kohr challenges the sufficiency of the evidence supporting all three of the crimes for which he was convicted: third-degree murder, EWOC, and simple assault.

A person is guilty of third-degree murder when he commits a killing "which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." ***Commonwealth v. Morris***, 958 A.2d 569, 576 (Pa. Super. 2008) (citation omitted), *appeal denied*, 991 A.2d 311 (Pa. 2010). ***See*** 18 Pa.C.S. §§ 2501, 2502(c). The Pennsylvania Supreme Court has explained that the malice required for a murder conviction,

comprehends not only a particular ill-will, but every case where there is wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

***Commonwealth v. Packer***, 168 A.3d 161, 168 (Pa. 2017) (quotation omitted). In practical terms:

[O]ur courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for "an unjustified and extremely high risk that his actions might cause death or serious bodily harm."

***Id.***, (quotation and internal punctuation omitted).

Here, Kohr argues the Commonwealth failed to establish he caused the death of his daughter and he acted with malice. ***See*** Kohr's Brief at 28-31. He notes the Commonwealth "sought to prove malice through both expert testimony and circumstantial evidence," presenting the testimony of the forensic pathologist who opined that Desirae died from traumatic brain injury and traumatic asphyxiation, and the circumstantial evidence that Kohr was angry with Kirsch for leaving him alone with a sick child. ***Id.*** at 29. However, he insists there was no evidence that he ever physically harmed or neglected the child, and the only "trauma" he recalled was Desirae falling in the swing, an event that the forensic pathologist testified could not have caused her death. ***Id.*** at 30. Furthermore, the evidence revealed there were other people present in the home, although no one heard any struggle or assault, and there were no external bruises or handprints on Desirae. ***See id.*** Therefore, Kohr

maintains the evidence was insufficient to find him guilty of third-degree murder.

In response, the Commonwealth contends Kohr's argument "completely ignores" the testimony of the forensic pathologist, Dr. Ross. Commonwealth's Brief at 18. We agree. Although there were no eyewitnesses to Kohr's physical assault of his daughter, Dr. Ross' detailed explanation of her injuries, coupled with circumstantial evidence, was more than sufficient to support the jury's verdict. The trial court addressed this claim as follows:

> Here, Dr. Ross testified that Desirae died from traumatic asphyxiation and traumatic brain injury. Specifically, Dr. Ross testified that Desirae's chest may have been compressed for up to fifteen minutes with up to twenty pounds of force. Several witnesses testified that [Kohr] was the only person with Desirae during the hour preceding her death. Furthermore, [Kohr] offered multiple explanations for Desirae's death, including dropping her on the swing and squeezing her too hard; both were explained by Dr. Ross to be medically and scientifically impossible. [Kohr] only clarified his conduct after the release of Desirae's autopsy. According to Dr. Ross, Desirae was subjected to trauma and high forces of deceleration similar to whipping a child's body or throwing a child onto a bed or floor. The force was so severe that Desirae suffered bilateral retinal hemorrhages in the eyes, rendering her blind.
>
> Taken together, in a view most favorable to the Commonwealth, the evidence provided to the jury is that [Kohr] was the only adult in the room with Desirae when she suffered such injury to her chest as to equal a compression with up to twenty pounds of force for a period of several minutes. The pressure of this force on her small body was significant enough to cause her blindness before death. Clearly this evidence is more than sufficient to prove the requisite malice, and thus the conviction for Murder in the Third Degree was appropriate.

Trial Court Opinion, 9/4/2018, at 6-7 (footnotes with record citations omitted).

Our review of the record reveals ample support for the trial court's conclusions. The evidence showed Desirae was in Kohr's sole care from approximately 11:00 p.m. on May 13th, until approximately 4:00 p.m. on May 14th when Kohr called 911. Dr. Ross' description of Desirae's injuries, and the force required to cause them, left no doubt as to Kohr's culpability in her death. Indeed, Dr. Ross opined that while Desirae was still alive, her chest was compressed down to her liver, since he observed the impression of her ribs in her liver and lungs. *See* N.T., 10/30/2017-11/3/2017, at 355. He further testified that the force required to do that, and lead to her asphyxiation, would be at least five to 20 pounds of pressure applied for at least five minutes, and the child would react to not getting enough oxygen by thrashing about. *See id.* at 364, 378. Dr. Ross also observed that Desirae had blood clots in the subdural space of her brain caused by periods of acute deceleration, as if she had been thrown on a bed or blanket. *See id.* at 367-368. He opined these injuries were "anywhere from zero days up to eight days old." *Id.* at 367. Moreover, as a result of the blunt force trauma Desirae was subjected to less than 48 hours before her death, she suffered from retinal hemorrhages in both eyes that rendered her blind. *See id.* at 380-381.

We note Kohr belatedly attempted to explain Desirae's injuries by claiming she hit her head after he dropped the swing while she was in it, and that he may have hugged her too tightly. *See id.* at 308, 317-318. However, Dr. Ross testified that neither of these purported incidents would have caused the injuries that led to her death. *See id.* at 408-409, 412. Accordingly, we

agree with the trial court's conclusion that evidence was sufficient for the jury to conclude Kohr acted with the malice required to convict him of third-degree murder.

In order to convict a person of EWOC, the Commonwealth must prove the defendant "knowingly endanger[ed] the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). Although the offense is generally graded as a first-degree misdemeanor, it may be increased to a third-degree felony if the jury finds "there is a course of conduct of endangering the welfare of a child[.]" 18 Pa.C.S. § 4304(b) (2006, Nov. 29, P.L. 1581, No. 179, § 1).

Kohr's challenge to his EWOC conviction is two-fold. First, he argues the evidence did not demonstrate the elements of the crime. Kohr contends the Commonwealth tried to prove he acted knowingly when he failed to give Desirae Pedialyte as he was instructed to do. However, he insists this only demonstrated poor judgment, and was not a factor in Desirae's death. **See** Kohr's Brief at 32-33. Kohr also maintains the Commonwealth failed to prove he was aware "the child was in circumstances that threatened the child's physical and psychological welfare." **Id.** at 33. He states that although the medical testimony revealed Desirae had blood clots surrounding her brain, there was no evidence he was aware of her condition. In fact, Kohr believed Desirae had a 24-hour bug. **See id.** Furthermore, Kohr emphasizes he took "affirmative, reasonable steps to protect Desirae" by calling 911 and seeking help from the child's grandfather. **Id.** at 35. Second, Kohr argues the

- 10 -

Commonwealth failed to prove he engaged in a "course of conduct … that caused the death of this child." **Id.** Although Dr. Ross observed blood clots from prior bleeds in the child's brain, Kohr maintains there was no evidence the injuries resulted from his conduct, especially because he did not live with the child for the first four months of her life. **See id.** at 35-36.

In concluding the evidence was sufficient to convict Kohr of EWOC, by engaging in a course of conduct, the trial court opined:

> At trial, Dr. Ross testified that Desirae's injuires were caused by multiple acts over the course of up to eight days, suggesting that she suffered extreme violence on multiple occasions prior to her death. There was also testimony that a significant portion of the time prior to Desirae's death was spent in the company of [Kohr], and that the fatal action occurred while she was solely in his care. Finally, there was evidence suggesting that [Kohr] failed to follow the doctor's orders regarding Desirae's care. The jury was specifically instructed on the difference between Endangering the Welfare of Children and Endangering the Welfare of Children-Course of Conduct. Given the credible evidence provided by Dr. Ross regarding Desirae's repeated, traumatic injuries, the evidence was more than sufficient to support the jury's finding that [Kohr] Endangered the Welfare of Desirae through a Course of Conduct.

Trial Court Opinion, 9/4/2018, at 8.

We agree with the trial court's assessment that the evidence was sufficient to support the jury's verdict. Preliminarily, we note Kohr improperly focuses his argument on his self-described "poor judgment" in failing to give Desirae Pedialyte, as instructed by the doctor. However, he ignores the testimony of Dr. Ross that Desirae died very shortly after being asphyxiated. **See** N.T., 10/30/2017-11/3/2017, at 384 (opining "[t]he traumatic

asphyxiation would be going on minutes before the child died"). As it was undisputed that Desirae was in Kohr's sole care from 11:00 p.m. on May 13 until 4:00 p.m. on May 14, the evidence clearly supported the jury's determination that Kohr "knowingly endangered the welfare" of his child. 18 Pa.C.S. § 4304(a)(1).

Moreover, with regard to the course of conduct element, Dr. Ross testified that "[m]ultiple events" caused both the traumatic brain injury and traumatic asphyxiation. N.T., 10/30/2017-11/3/2017, at 385. The doctor further explained that either event would have resulted in Desirae's death, and that "[t]he brain stuff" had been going on "zero to eight days, up to eight days" before her death, while the asphyxiation occurred just minutes before her death. *Id.* at 384. We acknowledge the doctor was unable to specify the exact date of the brain injury. However, after first denying Desirae was involved in any accident or fall, Kohr later "admitted" that he "dropped [Desirae] in the swing, and she hit her head, and that's what caused her to stop breathing, to become unresponsive." *Id.* at 298-299. The jury could have considered Kohr's constradictory statements to be evidence of his guilt.

Furthermore, Desirae's autopsy revealed she was dehydrated. Dr. Ross testified the child's stomach contained "no formula, Pedialyte, fluids, white stuff, nothing, pink stuff, green stuff, nothing." *Id.* at 357. While he acknowledged the dehydration did not cause Desirae's death, the doctor stated it "didn't help things." *Id.* at 413. As noted *supra*, Desirae was in Kohr's sole care for the 17 hours prior to her death. Although he knew she

had been ill, Kohr failed to give her Pedialyte and Tylenol as instructed by her pediatrician. ***See id.*** at 137-138 (Kirsch testifying that she explicitly told Kohr about the doctor's instructions, she purchased Tylenol and Pedialyte, and Kohr told her "he would take care of it."); 65-66 (chief deputy coroner observed unopened bottles of Tylenol and Pedialyte at Kohr's home). Therefore, Kohr's failure to feed and care for his sick child, coupled with the traumatic asphyxiation injury she suffered minutes before her death, was sufficient for the jury to conclude Kohr engaged in "multiple endangering acts" which violated a duty of care to his six-month old daughter.[7] ***Commonwealth v. Kelly***, 102 A.3d 1025, 1031 (Pa. Super. 2014).

Lastly, Kohr maintains the jury's verdict of simple assault was not supported by the evidence. Pursuant to Section 2701 of the Crimes Code, a person is guilty of simple assault if he, *inter alia*, "attempts to cause or

---

[7] We note a panel of this Court explained the "course of conduct" element as follows:

> [I]t is designed to punish a parent who over days, weeks, or months, abuses his children, such as repeatedly beating them or depriving them of food. The statute was clearly not designed for an event that occurs within minutes, or, perhaps in a given case, even hours.

***Commonwealth v. Popow***, 844 A.2d 13, 17 (Pa. Super. 2004). While the ***Popow*** Court implied that multiple days of abuse was required to find a course of conduct, we do not read the statute as narrowly. Furthermore, although the jury charge in the present case was not transcribed, we note the Standard Suggested Jury Instructions for EWOC-course of conduct charges the jury that "[a] course of conduct means a pattern of actions composed of more than one act over a period of time, however, short, evidencing a continuity of conduct[.]" Pa.S.S.J.I. (Crim.) 15.4304B.

- 13 -

intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

With regard to his simple assault conviction, Kohr concisely states, "[t]he Commonwealth failed to prove [he] ever harmed Desirae in any way whatsoever." Kohr's Brief at 37. He insists the evidence merely established that he "may have hurt Desirae through an accident involving the child swing." *Id.* This brief argument completely ignores Dr. Ross' testimony that Desirae was asphyxiated when at least five pounds of pressure was applied to her chest, compressing it down to her liver and lungs, for at least five minutes, during a time when she was in the sole care of Kohr. *See* N.T., 10/30/2017-11/3/2017, at 355, 364, 378. Accordingly, we find his sufficiency argument fails.

Next, Kohr challenges the discretionary aspects of his sentence. Such a claim is not appealable as of right, but "must be considered a petition for permission to appeal." *Commonwealth v. Best*, 120 A.3d 329, 348 (Pa. Super. 2015) (quotation omitted). To reach the merits of a discretionary issue, this Court must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved [the] issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

***Commonwealth v. Edwards***, 71 A.3d 323, 329-330 (Pa. Super. 2013) (citation omitted), *appeal denied*, 81 A.3d 75 (Pa. 2013).

Kohr complied with the procedural requirements for this appeal by filing a timely post-sentence motion for modification of sentence, and subsequent notice of appeal, and by including in his appellate brief a statement of reasons relied upon for appeal pursuant to ***Commonwealth v. Tuladziecki***, 522 A.2d 17 (Pa. 1987), and Pa.R.A.P. 2119(f). Therefore, we must determine whether he has raised a substantial question justifying our review.

Here, Kohr presents three challenges to his sentence. First, he argues the sentence imposed for third-degree murder was excessive because the court failed to consider mitigating circumstances, such as the effort he took to help Desirae, his cooperation with police, and the lack of physical evidence. Second, Kohr contends the court abused its discretion in imposing a consecutive sentence for EWOC, which he claims was "unquestionably unduly harsh considering that the Commonwealth failed to prove Mr. Kohr engaged in any course of conduct that caused harm to his child." Kohr's Brief at 27. In his last argument, Kohr maintains his sentence for simple assault was excessive because of the lack of physical evidence.

A substantial question exists when an appellant sets forth "a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process." ***Commonwealth v. Ventura***, 975 A.2d

1128, 1133 (Pa. Super. 2009), *appeal denied*, 987 A.2d 161 (Pa. 2009) (citation omitted). This Court has held that "an excessiveness claim in conjunction with an assertion that the court did not adequately consider a mitigating factor may present a substantial question." **Commonwealth v. Zeigler**, 112 A.3d 656, 662 (Pa. Super. 2015). Further, the imposition of consecutive rather than concurrent sentences may present a substantial question when a defendant argues the aggregate sentence is "unduly harsh, considering the nature of the crimes and the length of imprisonment." **Commonwealth v. Swope**, 125 A.3d 333, 338 (Pa. Super. 2015) (quotation omitted). Therefore, Kohr has raised a substantial question with regard to his sentence for third-degree murder and EWOC. However, his challenge to his simple assault sentence does not pose a substantial question implicating the Sentencing Code or sentencing norms; rather, his argument reads like his sufficiency of the evidence claim. Accordingly, we will not review Kohr's challenge to his simple assault sentence.

Preliminarily, we emphasize "[s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." **Commonwealth v. Bullock**, 170 A.3d 1109, 1123 (Pa. Super. 2017) (citation omitted), *appeal denied*, 184 A.3d 944 (Pa. 2018). Moreover,

> [w]here the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating

statutory factors." Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.

*Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010) (internal citations omitted). Indeed, this Court should vacate a sentence imposed within the standard guidelines range only if we find "the case involves circumstances where the application of the guidelines would be clearly unreasonable." 42 Pa.C.S. § 9781(c)(2).

Here, the trial court explicitly stated it relied upon the presentence investigation report in imposing Kohr's sentence. *See* N.T., 1/23/2018, at 22. In addition, all of Kohr's sentences were imposed within the standard range of the sentencing guidelines. *See* N.T., 1/23/2018, at 23; Pre-Sentence Investigation, 1/17/2018, at unnumbered 1-2. Accordingly, the sentence imposed by the trial court is presumptively reasonable.

To the extent Kohr contends the trial court ignored mitigating factors - such as the steps he took to help Desirae, his cooperation with police, and the lack of physical evidence - we find that he mischaracterizes the evidence. Kirsch testified that when she called to check on Desirae, Kohr told her he thought the baby was not breathing. *See* N.T., 10/30/2017-11/3/2017, at 153-154. It was at that time that Kirsch told him to call 911. *See id.* Moreover, while Kohr insists he cooperated with police, he ignores the fact that he appeared to tamper with the evidence by attempting to open the unopened bottle of Pedialyte, and removing the trach tube from Desirae's mouth, when he had been instructed not to do so by the hospital staff. *See*

*id.* at 56-58, 66-67,. Furthermore, Kohr did not reveal the child's alleged fall in the swing, or try to explain the asphyxiation, until after he was confronted with the autopsy results. **See id.** at 298-300, 317-318. We find no basis to conclude the court's sentence was unreasonable.

With regard to the court's imposition of a consecutive sentence for EWOC, it is well settled that a trial court has the discretion to determine if multiple sentences should run concurrently or consecutively. **See Commonwealth v. Hill**, 66 A.3d 365, 370 (Pa. Super. 2013). "Although this Court has previously invalidated lengthy term-of-years sentences that trial courts have run consecutively, most involved property crimes[, and v]ery few have involved violent offenses." **Commonwealth v. Foust**, 180 A.3d 416, 441 (Pa. Super. 2018), *citing* **Commonwealth v. Dodge**, 957 A.2d 1198 (Pa. Super. 2008), *appeal denied*, 980 A.2d 606 (Pa. 2009).

In the present case, the trial court opined it imposed consecutive sentences "in order to hold the defendant accountable for the multiple acts of harm which he committed against his daughter." Trial Court Opinion, 7/5/2018, at 11, *quoting* N.T., 1/23/2018, at 23. Considering the jury specifically found Kohr guilty of engaging in a course of conduct, we conclude the court's imposition of consecutive sentences was not an abuse of discretion. Therefore, Kohr's sentencing claims entitle him to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/14/2019