J-S50044-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CLINTON SUMTER, | : | |
| | : | |
| Appellant | : | No. 3269 EDA 2018 |

Appeal from the Judgment of Sentence Entered October 11, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003982-2017

BEFORE:    BENDER, P.J.E., SHOGAN, J. and STRASSBURGER, J.*

MEMORANDUM BY BENDER, P.J.E.:                    Filed: April 30, 2021

Appellant, Clinton Sumter, appeals from the judgment of sentence of an aggregate term of 11½ to 23 months' incarceration, followed by 2 years' probation, imposed after he was convicted of endangering the welfare of a child ("EWOC") (18 Pa.C.S. § 4304(a)(1)), and recklessly endangering another person ("REAP") (18 Pa.C.S. § 2705).  We affirm.

We derive the following factual and procedural background from the record.  On February 10, 2017, T.S. (born May 2012), was in the care of his maternal uncle, Appellant, when T.S. sustained severe burns covering 24% of his body.  For several days in early February 2017, Appellant was taking care of T.S.  They were staying at the home of Appellant's ex-girlfriend, Syreeta Camp.[1]  On the morning of February 10, 2017, Appellant gave T.S. a bath

---

[1] Camp's daughter, sister, and nephew also lived at Camp's home.

* Retired Senior Judge assigned to the Superior Court.

because he had wet himself on the couch. Camp was awakened to Appellant calling her into the bathroom, where she found Appellant upset, panicking, and "freaking out" because the water was too hot and she noticed blisters forming on T.S.'s hands and feet. N.T., 7/2/2018, at 118, 123; N.T., 7/3/2018, at 23-24, 26. Camp filled the bathtub with cold water, placed T.S. in the tub to cool his burns, sent her nephew to buy burn creams and bandages, and applied them to T.S.'s burn wounds.

Appellant and T.S. continued to stay at Camp's home until February 16, 2017. Appellant and Camp cared for T.S. during this time, with Camp applying creams, wrapping the wounds, and giving T.S. over-the-counter pain medication and fluids. While Appellant and Camp discussed taking T.S. to the hospital, they did not, nor did they seek medical treatment.

On February 16, 2017, after an argument between Appellant and Camp, Appellant and T.S. left Camp's home to stay at the home of his girlfriend, Taleka Moody. The next day, February 17, 2017, Appellant texted Camp, saying "I can't take care of [T.S.]. I'm [sic] have to send him somewhere." N.T., 7/3/2018, at 15; Ex. C-5 at 13. Early the next morning, at about 1:45 a.m. on February 18, 2017, T.S.'s father, L.S., picked up T.S. from Appellant and called for an ambulance.[2] T.S. arrived at the emergency room of

---

[2] From the time of the incident on February 10, 2017, until T.S.'s father, L.S., picked up T.S. from Appellant on February 18, 2017, L.S. was aware T.S. had been injured, but T.S. remained in Appellant's care. There is conflicting evidence in the record as to whether L.S. visited T.S. during this time period or first saw T.S.'s injuries when he picked him up on the 18th of February.

Children's Hospital of Philadelphia ("CHOP") shortly thereafter and was immediately transferred to the pediatric burn unit at St. Christopher's Hospital for Children in Philadelphia, where he stayed for over one month, until March 23, 2017.

T.S. remained in the intensive care unit ("ICU") throughout his hospital stay, where he received critical care, surgical interventions, infection control, narcotic pain control, physical therapy, occupational therapy, nutrition, hydration, and social services.

T.S. required six surgeries under general anesthesia for skin debridements (*i.e.*, removal of dead skin) and skin grafting (both cadaver skin grafts and thickness grafts from his own body).[3] He underwent near-daily intravenous ("IV") sedation for dressing changes. He required transfusions and had feeding difficulties. T.S. was largely bedridden and had to spend large parts of his hospitalization lying prone on his stomach, unable to bear weight on his buttocks and unable to use his hands and feet. T.S.'s burns over joints caused webbing, where the skin has limited mobility, and his wounds have an abnormal appearance due to the depth of the burns and the skin grafting. Upon discharge, T.S. was transferred to an in-patient acute care rehabilitation facility, where he remained for another month.

---

[3] At the time of trial, T.S. was scheduled to undergo further surgeries.

Based on the foregoing, Appellant was charged with REAP, EWOC, simple assault (child under 12) (18 Pa.C.S. § 2702), and aggravated assault (18 Pa.C.S. § 2701(b)(2)). On July 2-3, 2018, Appellant proceeded to a joint, non-jury trial with T.S.'s father. At trial, the Commonwealth presented, consistent with the foregoing factual account, testimony of Detective Edward Enriquez, the detective assigned to the special victim's unit and T.S.'s case, Camp, and Camp's daughter Lachelle, along with, *inter alia*, T.S.'s medical records, photographs of T.S.'s injuries, police investigation reports, and text messages between Appellant and Camp.

The Commonwealth also presented the expert testimony of Dr. Marita Lind, Director of Child Protection Program at St. Christopher's Hospital. Dr. Lind is board-certified in pediatrics and child abuse pediatrics and was qualified as an expert in those areas. Dr. Lind consulted and examined T.S. at the hospital. She testified that T.S.'s injuries upon admission to St. Christopher's Hospital were "burns to his hands and wrists, his feet and ankles, buttocks, and the underneath surface of his scrotum." N.T., 7/2/2018, at 27. Covering 24% of T.S.'s total body surface area, he suffered "very deep second-degree" partial thickness burns, which "are burns that have destroyed the tissue into the level of the dermis, but have not completely destroyed the dermis, and are all the way down to the muscle." *Id.* at 27-28, 64.

Dr. Lind opined that T.S. "sustained severe burns in a pattern indicative of immersion in a hot liquid" and the "pattern of injury [was] concerning for

non-accidental immersion." N.T., 7/2/2018, at 96; Ex. C-2 at 17, 24; *see also id.* at 40. She further opined that "there is indication from the burn pattern that the child was not able to remove himself from the water." *Id.* at 96-97. She explained that "when a body is exposed to hot liquid, and someone is able to move away from the hot liquid, there will be splash marks or irregularities of the border. If someone is still in hot liquid, then there will be a sharper demarcation," which is when "a burn has a sharp edge" and "a clear border." *Id.* at 48. Dr. Lind further testified that the edges of T.S.'s burns "being so defined raises concern that the child was still when he was in the hot liquid." *Id.* at 49. The lack of an irregular border or splash marks on an immersion burn suggests the person was not moving to take that part of the body out of the hot liquid. *Id.* at 50-51. Dr. Lind explained as follows:

> [W]hen a person comes into contact with a hot liquid, the reflex is to protect the body from injury and withdraw the part of the body that's being burned.
>
> It is very concerning when you have a pattern that involves both feet, both hands, and the buttocks, because it's not a position that people can easily enter into a liquid without splashing. It is very concerning that none of the parts of the body were able to be lifted or removed.
>
> So the concern for child abuse is raised when you have no signs in the burn that there was the ability for the child to remove themselves from the injuring liquid.
>
> \*\*\*
>
> It's concerning that all the areas were burned, because one would enter water with one foot or one hand or one side of your body rather than all of these points. So it's concerning to me that the burn exists in these areas [of both hands, both feet, and

- 5 -

buttocks]. And it's concerning that all the areas are severely burned.

*Id.* at 51-52. Dr. Lind found "the lack of marks on the child indicating he tried to escape" to be "quite concerning." *Id.* at 75. Dr. Lind acknowledged on cross-examination, however, that if the water temperature was hot enough, it is feasible T.S. was picked up and placed unknowingly in the hot water. *Id.* at 62-64.

Dr. Lind opined T.S. experienced "very significant pain" immediately upon sustaining the burns and continuing for the nine days until he was hospitalized and received appropriate pain management. *Id.* at 36. In the hospital, T.S.'s pain continued to be severe and some days it was so acute it could not be controlled with pain medication.

Dr. Lind testified that the severity of T.S.'s injuries would have been immediately apparent at the time of the incident (*i.e.*, some of his skin would have immediately fallen off or blistered), and that the care provided by Appellant was inadequate. For a child T.S.'s age, she explained that proper treatment for his burn wounds is hospitalization in a pediatric burn center, medical treatment to the burned areas, pain control, and fluid and nutritional support. She testified that the delay in medical treatment increased T.S.'s risk of serious infection and dehydration; contributed to his fluid loss and volume depletion, which negatively affected his kidney function; and prevented him from receiving adequate pain management.

At the conclusion of the trial, the trial court found Appellant guilty of REAP and third-degree felony EWOC, and not guilty of aggravated assault and simple assault.[4] Appellant was subsequently sentenced to a term of 11½ to 23 months of incarceration, to be followed by 2 years of probation for EWOC, and a concurrent term of two years of probation for REAP. Appellant filed a timely notice of appeal, and timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On February 12, 2020, the trial court advised that it would not file a Rule 1925(a) opinion because the trial judge who had been assigned to Appellant's case was no longer sitting as a judge with that court.

Appellant now presents the following issues for our review:

A. Was not the evidence insufficient as a matter of law to sustain Appellant's conviction for [EWOC], where the evidence presented by the Commonwealth failed to establish a knowing *mens rea*?

B. Was not the evidence insufficient to raise the gradation of [EWOC] from a misdemeanor of the first degree to a felony of the third degree, where the evidence did not make out a course of conduct?

Appellant's Brief at 3 (suggested answers omitted).

---

[4] Camp and T.S.'s father, L.S., were similarly charged. N.T., 7/3/2018, at Ex. C-8 at 1. As noted above, Appellant and L.S. were tried jointly. The trial court found L.S. not guilty of all charges. *Id.* at 124-25. While not entirely clear from the record, it appears Camp entered into a plea agreement which resulted in her pleading guilty to EWOC. N.T., 7/2/2018, at 129. Camp testified at Appellant's and L.S.'s joint trial as a cooperating witness for the prosecution.

Appellant's first issue challenges the sufficiency of the evidence to support his EWOC conviction. "A challenge to the sufficiency of the evidence presents a question of law and is subject to plenary review." *Commonwealth v. Hitcho*, 123 A.3d 731, 746 (Pa. 2015).

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidenced admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted). The factfinder is free to believe all, part, or none of the evidence presented. *Commonwealth v. Frein*, 206 A.3d 1049, 1063 (Pa. 2019).

Appellant claims that the trial court erred in convicting him of EWOC because the Commonwealth failed to prove the requisite *mens rea*, *i.e.*, whether he acted knowingly. Appellant's Brief at 12-21. Appellant argues that he did not act knowingly when he placed T.S. in the hot water without first checking the water temperature. *Id.* at 15-16. According to Appellant, it is "not common sense" to know "that placing a child into a bathtub in a regular residential apartment without checking the water temperature would place a child in the situation where his welfare is threatened to the extent that the flesh might be burned from his body." *Id.* at 16-17. In addition, Appellant argues the same reasoning to justify his failure to seek medical treatment for T.S.'s injuries. *Id.* at 17. He claims that "hindsight is always 20/20" and he

did not know at the time that T.S. required medical treatment. *Id.* According to Appellant, "[t]hese burns initially would not have looked that bad" and because Appellant believed the burns were not serious, he did not know T.S. required medical treatment. *Id.* at 18.

The crime of EWOC is defined, in relevant part, as follows: "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1).[5]

EWOC "is a specific intent offense which was enacted in broad terms to safeguard the welfare and security of children." *Commonwealth v. Fewell*, 654 A.2d 1109, 1117 (Pa. Super. 1995) (citation omitted). To be convicted under this statute, the Commonwealth must prove a "knowing violation of a duty of care." *Id.* (quoting *Commonwealth v. Cardwell*, 515 A.2d 311, 313 (Pa. Super. 1986)).

> Moreover, this Court has employed a three-prong standard to determine whether the Commonwealth has met its burden of establishing the intent element of the EWOC offense. … [T]o support a conviction under the EWOC statute, the Commonwealth must establish each of the following elements: (1) the accused is aware of his/her duty to protect the child; (2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and (3) the accused has either failed to act or has taken action so lame or meager that such

---

[5] Appellant does not dispute that he was a "person supervising the welfare of a child" as defined in the statute. *See* Appellant's Brief at 15; *see also* 18 Pa.C.S. § 4304(a)(3).

actions cannot reasonably be expected to protect the child's welfare.

***Commonwealth v. Wallace***, 817 A.2d 485, 490-91 (Pa. Super. 2002) (citations and internal quotation marks omitted). Section 4304 is to be given meaning by reference to the common sense of the community and the broad protective purposes for which it was enacted. ***Commonwealth v. Taylor***, 471 A.2d 1228, 1231 (Pa. Super. 1984).

Here, the trial court offered the following in support of Appellant's EWOC conviction:

> [O]n the [EWOC] charge, and the [REAP] charge, that's a different story [from the aggravated and simple assault charges]. It is possible for me to believe that under the circumstances, it was more than you should have known that that water was too hot before you put [T.S.] in it. The circumstantial evidence tells me that anybody running that bath and preparing a four-year[-]old for a bath would have seen when the water was running into the tub, that there was something different with the water than what you were accustomed to when you were bathing children in the past. And you having accepted the responsibility of care and supervision over that child, you were responsible for what you do and what you didn't pay attention to.
>
> Furthermore, after the injuries took place, you, much more than [T.S.'s father, L.S.,] had an opportunity to really begin to understand the seriousness of these injuries. You were the one who had accepted supervision and control over that child. It is no defense that you left that[,] as your lawyer says, to [Camp's] judgement [*sic*]. You had a duty to do more and you didn't do more. So for that reason, that combination of reasons, I think you are guilty of [EWOC] at both ends of this; both in terms of the infliction of the injury and in terms of your failure of promptly to see to it that that child got the kind of hospital care that he [needed]. And that goes way beyond what I think or any other parent would think or any doctor would think, or any detective would think should have been done under these circumstances.

That goes directly to a duty you had, a responsibility you accepted, and the evidence that was there in front of your own eyes.

*** 

So I find you guilty of [EWOC], and that is graded as a felony of the third degree. I also find you guilty of a misdemeanor, [REAP], because I think you recklessly endangered [T.S.] when you put him in water that you must have known was too hot, way too hot for a child to be bathing in it.

N.T., 7/3/2018, at 126-28.

We agree that the evidence presented at trial, viewed in the light most favorable to the Commonwealth, was sufficient to find Appellant guilty of EWOC. As noted *supra*, Appellant concedes he was supervising T.S.'s welfare. With respect to Appellant's intent, the three-prong test was satisfied. First, there is no dispute Appellant was aware of his duty to protect T.S. The Commonwealth proved the second prong of the test, that Appellant was aware that T.S. was in circumstances that could threaten his physical welfare. As this Court has explained, "[i]t is impossible to place [a] child in scalding hot bath water, either intentionally or recklessly causing bodily injury, without knowingly violating a duty of care by not checking the water before placing the child in the tub." **Commonwealth v. Coppedge**, 984 A.2d 562, 563 (Pa. Super. 2009). And finally, the third prong, that Appellant failed to act or acted so inadequately, is satisfied. The evidence established that Appellant failed to check the water temperature before placing T.S. in the bathtub and failed to seek any medical treatment for T.S. following his being burned. The expert testimony established that T.S.'s injuries would be apparent immediately, as

his skin would have fallen off or blistered upon being so severely burned. As Dr. Lind testified, the actions Appellant did take after T.S. was injured were inadequate, rendering them "so lame or meager that such actions could not reasonably be expected to protect" T.S.'s welfare. **See Wallace**, 817 A.2d at 490-91. The record contains sufficient evidence that Appellant knowingly placed T.S., age four, in scalding water, which caused severe burns, and knowingly failed to seek timely medical treatment. Accordingly, Appellant is not entitled to relief on this claim.

Appellant's next challenge is to the trial court's gradation of his EWOC offense as a felony of the third degree. Appellant's Brief at 22-25. He argues that if we conclude sufficient evidence existed to sustain his EWOC conviction, we "should find that the trial court erred in grading the charge as a felony of the third degree because the Commonwealth failed to establish a course of conduct." **Id.** at 22. According to Appellant, "[t]here was no course of conduct. Rather, there was an evolving situation, at the end of which [Appellant] knew that the child needed more care than he could provide and he chose to relinquish him to father." **Id.** at 24.

"The proper grading of a criminal offense is an issue of statutory interpretation and implicates the legality of the sentence imposed." **Commonwealth v. Felder**, 75 A.3d 513, 515 (Pa. Super. 2013) (citation omitted). "The interpretation of a statute is a pure question of law, and

therefore our standard of review is *de novo* and our scope of review is plenary." **Id.** (citation omitted).

At the time of the incident, the EWOC statute established gradation as follows: "An offense under this section constitutes a misdemeanor of the first degree. However, where there is a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree." 18 Pa.C.S. § 4304(b) (effective Jan. 29, 2007 – Aug. 27, 2017).[6]

In interpreting the legislative language for "course of conduct," this Court has explained that it is designed "to punish a parent who over days, weeks, or months, abuses his children." **Commonwealth v. Popow**, 844 A.2d 13, 17 (Pa. Super. 2004). "Although the EWOC statute does not define 'course of conduct,' the phrase is clearly used in that context to differentiate the penalties for single and multiple endangering acts." **Commonwealth v. Kelly**, 102 A.3d 1025, 1031 (Pa. Super. 2014).

As noted *supra*, at the conclusion of trial, the trial court explained that it found Appellant had engaged in a course of conduct when he inflicted T.S.'s injuries and then failed to seek prompt and proper medical attention for several days. N.T., 7/3/2018, at 127. Upon review, we discern no error in the court's decision. Appellant engaged in a course of conduct over the nine

---

[6] On August 28, 2017, the EWOC statute was amended to include, *inter alia*, additional factors that could elevate the grading of an EWOC conviction from a misdemeanor to a felony. The EWOC statute was amended after the incident at issue in this case and, thus, the prior version, as quoted *supra*, applies herein.

days between when T.S. was burned and when he received medical treatment at the hospital. During this period, Appellant (1) inflicted T.S.'s injuries, (2) failed to seek proper medical attention even though it was immediately apparent that T.S.'s injuries were so severe that a large area of T.S.'s skin had fallen off or blistered, and (3) continued to violate his duty of care to T.S. by failing to seek any medical treatment whatsoever. At no point did Appellant actually pursue medical care for T.S.; rather, he returned him to his father, who then immediately sought medical care upon seeing T.S.'s condition. The record evidence established that Appellant's care of T.S. was inadequate, as T.S.'s condition worsened over the course of time he was in Appellant's care and was not receiving medical treatment. Because the evidence and trial testimony were sufficient to establish a course of conduct, the third-degree felony grading was appropriate. Accordingly, Appellant's second claim is meritless.

Judgment of sentence affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*

*Prothonotary*

*Date:* *4/30/21*