J-S16009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATTHEW ROBERT WRIGHT | : | |
| | : | |
| Appellant | : | No. 1815 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 31, 2023
In the Court of Common Pleas of Northampton County
Criminal Division at No: CP-48-CR-0002961-2021

BEFORE: STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:                    **FILED JULY 22, 2024**

Appellant, Matthew Robert Wright, appeals from the May 31, 2023 judgment of sentence imposing an aggregate 52 to 104 months of incarceration for endangering the welfare of a child, simple assault and summary harassment. Upon review, we affirm.

In August 2021, the victim, A.A., began dating G.H., both of whom were freshmen at Northampton Area High School. N.T. Trial Vol II, 5/3/23, at 211. They primarily communicated via iMessage and SnapChat, which included sending sexually explicit messages and photographs. *Id.* at 213, 244.

On September 30, 2021, G.H. texted A.A. to ask if he was okay. *Id.* at 228. During the conversation, G.H. suspected that the person she was messaging with was not A.A. *Id.* at 229-233. Specifically, she testified that

_____

[*] Former Justice specially assigned to the Superior Court.

the text messages included language and punctuation that was not typical of A.A. *Id.* Ultimately, G.H. complied with the requests to send a sexually explicit photograph and video to A.A. *Id.* at 221, 223, 236-38. The next day at school, G.H. asked A.A. why he was acting "weird" the night before. *Id.* at 241. A.A. informed G.H. that Appellant took his cell phone and PlayStation 4 away approximately two weeks prior, and he was not communicating with her. N.T. Trial Vol I, 5/2/23, at 30.

On October 6, 2021, at approximately 11:30 p.m., Appellant arrived home from work to find his stepson, A.A., still awake and doing homework in his bedroom. *Id.* at 68. A.A.'s bedroom door was shut, but not locked. *Id.* at 71. Appellant opened A.A.'s door without knocking, took A.A.'s laptop away and told him to go to sleep. *Id.* at 70. A.A. went downstairs to use the bathroom before bed because Appellant was preparing a bath in the upstairs bathroom. *Id.* at 74-75. Appellant yelled and said offensive things about A.A. and his family while A.A. was using the bathroom. *Id.* at 75. While bickering, A.A. called Appellant a "pedo", short for pedophile.[1] *Id.* at 79. In response, Appellant barged into the bathroom, poured a bottle of water on A.A. while he was sitting on the toilet, and threw the empty bottle at him. *Id.* at 89-90.

A.A. went to change out of his wet clothing and shut his bedroom door. *Id.* at 92-93. Moments later, Appellant aggressively barged into A.A.'s

_____

[1] A.A. said he called Appellant a "pedo" because A.A. believed Appellant requested G.H. to send the sexually explicit photograph and video described above. *Id.* at 88.

bedroom holding something shiny in his right hand. *Id.* at 94-95. A.A. stood up as Appellant approached him. *Id.* at 96-97. Appellant then physically attacked A.A. – he punched and kicked A.A. in the arms, legs, and chest. *Id.* at 99. A.A. explained:

> I was always so scared to fight back, because, you know, I live with [Appellant], and I can never leave because I'm still a kid. But I – once I fought back, I should say, **the metal spoon came at me and hit my mouth and broke my tooth**, and I fell back on the wall behind me.

*Id.* (emphasis added). A.A. said that Appellant hit him with such force that when he fell back into the wall it moved his bed slightly. *Id.* at 107. When A.A. opened his eyes, he saw blood rushing out of his mouth. *Id.* at 108. After the initial shock wore off, A.A. put on socks and shoes, ran out of his bedroom, down the stairs, out the front door and straight to the police station. *Id.* at 110-11.

Officer John Shoemaker of the Northampton Police Department was on duty when A.A. arrived at the station a little after midnight on October 7, 2021. N.T., Trial Vol II, at 264. Officer Shoemaker described A.A. as nervous and out of breath, bleeding from the mouth with visible lacerations on his face. *Id.* at 264. "[T]here were cuts on his top lip, bottom lip, and his tooth was loose." *Id.* at 265. He said blood was dripping out of A.A.'s mouth onto his clothes. *Id.* Officer Shomaker called EMS and A.A. was transported to the hospital. *Id.* at 264.

Marcela Robles-Angles ("Ms. Robles-Angles"), A.A.'s mother, was working overtime when she received a voicemail from Officer Shoemaker that

A.A. was in the hospital, that she should come there, but not bring Appellant with her. *Id.* at 155. She arrived at the hospital to find A.A. bleeding from the mouth. *Id.* at 163. Once discharged from the hospital, A.A. and his mother went to the police station for A.A. to provide a written statement. N.T., Trial Vol I, at 144.

A.A. described some of his injuries as follows:

If you see right on my lip, like right in the middle of my lip on top, where my nose and my lip is, that's where the one puncture wound was. And then where my tooth is . . . it was broken completely in half, still like – like not intact, but it was stuck in my mouth, and it was broken in half. I could feel it wiggling; just moving in my mouth.

*Id.* at 114-15. Ultimately, the tooth had to be removed by a dentist. *Id.* at 123. A.A. will have to undergo surgery to have an implant installed, but must wait due to his age. *Id.* Thus, his tooth was still missing at the time of trial – two years after this incident. *Id.* at 124. A.A. was unable to eat, drink, or talk without difficulty for at least a month after sustaining the injuries. *Id.* at 130. Additionally, A.A. could not brush his teeth and the health of his teeth declined. *Id.* at 131.

In addition to this incident, A.A. testified to two other times where Appellant inflicted pain on him. One night while eating dinner, A.A. was arguing with his little sister when Appellant "out of nowhere, threw a knife at [A.A.'s] chest." N.T., Trial Vol II, at 10. A.A. described it as a serrated steak knife and it punctured his chest approximately one inch. *Id.* at 11, 14-15. A.A. looked down, saw a hole in his shirt and blood emanating from the hole.

- 4 -

*Id.* at 14. Ms. Robles-Angles cleaned A.A.'s wound but did not take A.A. to the hospital or call police. *Id.* at 15, 17. A.A. still has a scar from the injury. *Id.* at 20.

The other incident A.A. testified to occurred on October 5, 2021, the day prior to the assault which resulted in Appellant's arrest. A.A. said that he did not want to go to school after finding out about the messages between Appellant and G.H. on September 30, 2021. *Id.* at 33. He was humiliated and afraid the other students would make up rumors. *Id.* A.A. explained:

> I tried to stay in my bed, and then [Appellant] came inside the room, grabbed me behind my neck and started pouncing my head on my bed repeatedly telling me to go to school. Then my mom called the police, because she didn't know what was going to happen.
>
> And the police told me I had to go to school.

*Id.* at 33-34. Officer Shoemaker confirmed this incident during his investigation. *Id.* at 273.

Thereafter, Appellant was arrested and charged with endangering the welfare of a child ("EWOC"), simple assault, and summary harassment. Following a three-day jury trial, Appellant was found guilty of EWOC and simple assault, and the trial court found Appellant guilty of summary harassment. Sentencing was deferred for the completion of a presentence investigation and batterers assessment. On May 31, 2023, Appellant was sentenced to an aggregate term of 52 to 104 months of incarceration. Appellant filed a timely post sentence motion, which was denied by the trial

- 5 -

court.  This appeal followed.  Both the trial court and Appellant have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

A. Whether the evidence was insufficient as a matter of law to establish beyond a reasonable doubt that [Appellant] was guilty of the crime charged so as to convict him?

B. Whether the verdict of the jury is against the weight of the evidence as it is so weak and inconclusive that no probability of fact essential to any charge could be drawn as a matter of law?

C. Whether, at least some, jurors had considered evidence that was improperly admitted during the course of the trial and deliberations.  The court erred as a matter of law and/or abused its discretion in failing to declare a mistrial and when the Commonwealth argued "prior bad acts" in the presence of the jury with respect to several uncharged, unsubstantiated and unproven suggestions that [Appellant] was previously engaged in violent and sexual impropriety prior to the acts charged in the case.

D. Whether the sentence imposed by [the trial court] is manifestly excessive and unreasonable and whether the court erred as a matter of law and/or abused its discretion in denying [Appellant's] motion for judgment of acquittal, motion in arrest of judgment and motion for new trial.

Appellant's Brief at 4-5.

I.     SUFFICIENCY OF THE EVIDENCE

Appellant first challenges the sufficiency of the evidence.  Our standard of review is:

whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying the above test, we may not weigh

the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Brown*, 23 A.3d 544, 559-60 (Pa. Super. 2011) (*en banc*) (internal citations omitted).

Appellant was convicted of endangering the welfare of the child, graded as a felony of the third degree. Thus, "the Commonwealth must allege in the information and present evidence at trial of the additional factor of "course of conduct," and the jury must be instructed on such." *Commonwealth v. Popow*, 844 A.2d 13, 18 (Pa. Super. 2004). "Course of conduct" is not an element of the offense, but is an additional fact that the jury must find to increase the grading. *Id.*

"In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Freeman*, 128 A.3d 1231, 1248 (Pa. Super. 2015). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains

- 7 -

numerous elements that the Commonwealth must prove beyond a reasonable doubt." ***Id.***

In his Rule 1925(b), Appellant argued:

> The evidence presented by the Commonwealth was insufficient and was given improper weight as a matter of law to establish beyond a reasonable doubt that [Appellant] was guilty of each and every element of each and every crime charged so as to convict him of each of the crimes, specifically with respect to the elements of each and every crime charged[.]
>
> * * * *
>
> The jury was permitted to consider evidence which was insufficient to sustain a conviction on all charges and/or improperly admitted over objection of [Appellant] or disallowed by the [c]ourt.

Appellant's Concise Statement, 7/21/23, ¶¶ 6a, 6f. Appellant's Rule 1925(b) statement does not specify which element or elements of which crime or crimes the Commonwealth failed to prove beyond a reasonable doubt. This assertion is far too vague to warrant meaningful appellate review. ***Freeman, supra.***

Appellant's brief similarly lacks specificity. ***See*** Appellant's Brief at 20-24. He argues that "the Commonwealth possessed and presented no sufficient admissible evidence to prove [Appellant]" endangered the welfare of a child or committed simple assault or harassment. ***Id.*** at 23. Appellant has neither provided references to the record specific to the challenged element or elements nor developed the argument in any meaningful way. ***See*** Pa.R.A.P. 2119(b), (c). Simply put, Appellant's undeveloped argument impedes

meaningful appellate review. Thus, Appellant has waived his challenge to the sufficiency of the evidence.

II.    WEIGHT OF THE EVIDENCE

Alternatively, Appellant contends that the verdicts were against the weight of the evidence. Specifically, he claims that "the evidence proving guilt beyond a reasonable doubt was so weak and inconclusive that as a matter of law no probability of fact relating to the crime could be drawn." Appellant's Brief at 26. He further argues that "the verdict was contrary to the evidence so as to shock one's sense of justice and make a new trial imperative in the interests of obtaining justice." *Id.*

A challenge to the weight of the evidence concedes that there was sufficient evidence to sustain the verdict. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). We employ an abuse of discretion standard:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing the trial court's determination that the verdict is against the weight of the evidence.

*Id.* at 753. Additionally, "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the

issue in any other meaningful fashion capable of review, that claim is waived."
***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009).

Here, Appellant's "argument" consists only of boilerplate case law that explain our scope and standard of review in a weight of the evidence challenge. Appellant fails to make any specific argument or reference to the record. Thus, we find this claim waived. Even if not waived, Appellant fails to establish, and our review of the record fails to convince us, that the trial court abused its discretion in finding that the verdicts were not so contrary to the evidence as to shock one's sense of justice. He simply invites this Court to substitute our own judgment for that of the jury regarding the evidence presented and the credibility of the witnesses. That is not the role of this Court; therefore, no relief is due.

III.     MISTRIAL / EVIDENTIARY RULINGS

Appellant next claims that the trial court erred or abused its discretion by failing to declare a mistrial. Appellant contends that the trial court abused its discretion by not declaring a mistrial "when the Commonwealth attempted to shift the burden of proof to [Appellant] to prove his innocence in unrelated and improperly admitted "prior bad act" evidence." Appellant's Brief at 28. He also contends that "a mistrial should have been declared and the inadmissible ["prior bad act"] evidence should have been suppressed and excluded and not considered by the jury." Appellant's Brief at 38. Essentially, Appellant argues that the trial court *should have* granted a mistrial due to

manifest necessity because the trial court erred in its evidentiary rulings. *See id.*

Appellant's argument conflates several different issues: (1) the trial court's denial of Appellant's request for a mistrial; (2) a challenge that the trial court failed to act *sua sponte* and declare a mistrial; and (3) a challenge to the trial court's evidentiary rulings. We will attempt to separate and address those issues which have been preserved.

Mistrials are governed by Pennsylvania Rule of Criminal Procedure 605, which states: "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605(B). Our standard of review in assessing the denial of a mistrial is:

> The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion. A mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict. Likewise, a mistrial is not necessary where cautionary instructions are adequate to overcome any possible prejudice.

*Commonwealth v. Rega*, 933 A.3d 997, 1016 (Pa. 2007).

Appellant requested a mistrial after A.A. testified to the October 5, 2021 incident where Appellant repeatedly punched him in the head. Appellant's counsel objected and requested a mistrial on the ground that it was previously

undisclosed Pa.R.E. 404(b) evidence and notice was not provided in a timely manner.[2]  N.T., Trial Vol II, at 39.  The Commonwealth responded that both the criminal information and the victim's supplemental statement included a description of the October 5, 2021 incident.  *Id.* at 40-42.  The trial court did not declare a mistrial, finding that the Commonwealth charged Appellant with EWOC based on a course of conduct and that the Commonwealth was entitled to present their case regarding course of conduct.  The trial court limited the victim's testimony to what was provided in his supplemental statement to police.  *Id.* at 42.

Our review of the record indicates that the October 5, 2021 incident was included in the Commonwealth's 404(b) notice, as well as in its first motion *in limine* to introduce Rule 404(b) evidence.  *See* Notice Pursuant to Pa.R.E. 404(b), 4/19/22; *see also* Commonwealth's Motion, 5/9/22, at 3-5 (unpaginated).   The trial court granted the Commonwealth's motion finding that the evidence was "relevant to demonstrate course of conduct, res gestae, motive, intent, lack of accident and/or absence of mistake."  Order, 10/26/22.  Thus, the record belies Appellant's claim that he did not receive timely notice

---

[2] Generally, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Pa.R.E. 404(b)(1).  However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Pa.R.E. 404(b)(2).  To be admissible, the probative value of the evidence must outweigh its potential for unfair prejudice.  *Id.*

of the October 5, 2021 incident. The trial court acted within its discretion by denying Appellant's motion for mistrial.

To the extent Appellant challenges the trial court's evidentiary rulings, we will only address properly preserved issues. Generally, evidence is admissible if it is relevant. Pa.R.E. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. A trial court may exclude relevant evidence if its probative value is outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Pa.R.E. 403.

It is well settled that evidentiary rulings are within the sound discretion of the trial court. *Commonwealth v. DiStefano*, 265 A.3d 290, 297 (Pa. 2021). A trial court's ruling on the admissibility of evidence will only be reversed where there has been an abuse of discretion:

> An appellate court will not find an abuse of discretion based on a mere error of judgment, but rather . . . where the [trial] court has reached a conclusion which overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Id.* at 298 (internal citation and quotation marks omitted).

A. **Communications with a minor female**

On April 22, 2022, the Commonwealth filed its Rule 404(b) notice of its intent to introduce evidence related to "[Appellant's] alleged sexually

- 13 -

suggestive messaging of minor female(s)-acquaintances of A.A." Notice, 4/19/22. In its motion *in limine*, the Commonwealth argued that the evidence of the alleged sexually explicit messages was admissible as res gestae because it was part of the sequence of events leading up to the charged assault. Commonwealth's Motion, 5/9/22, at 5-6 (unpaginated). It was the Commonwealth's theory that the messages led to the argument between A.A. and Appellant which resulted in Appellant assaulting A.A. with a spoon.

Appellant filed an objection and argued that "the alleged evidence would be to paint [Appellant] in a negative light with alleged and unsubstantiated bad acts unrelated to the charges at trial." Defendant's Objection, 5/24/22, at 5-6. He further argued that introduction of the 404(b) evidence "would create a very real danger that the same would stir the passion in a jury and sweep them well beyond any rational consideration of guilt or innocence for the alleged crimes[.]" *Id.* at 7.

The trial court granted the Commonwealth's motion finding that the prior bad acts evidence was "relevant to demonstrate course of conduct, res gestae, motive, intent, lack of accident and/or absence of mistake." Order, 10/26/22. In its 1925(a) opinion, the trial court explained:

> [T]he evidence introduced at trial established that immediately prior to the assault at issue, the victim had confronted [Appellant] about [Appellant] using the victim's phone to solicit communications of a sexual nature from the victim's juvenile girlfriend. The probative value of this evidence outweighed any prejudice as it was directly relevant to demonstrating res gestae, motive, intent, lack of accident, and absence of mistake.

- 14 -

Trial Court Opinion, 8/24/23, at 2. We agree.

"[E]vidence of crimes, wrongs, or other bad acts may be admissible as *res gestae* when relevant to furnish the complete story or context of events surrounding the crime." ***Commonwealth v. Crispell***, 193 A.3d 919, 936 (Pa. 2018) (quotation marks omitted). Our Supreme Court explained:

> [A] "special circumstance" where evidence of other crimes may be relevant and admissible is where such evidence was part of the chain or sequence of events which became part of the history of the case and formed part of the natural development of the facts. This special circumstance, sometimes referred to as the "res gestae" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, *i.e.*, evidence of other criminal acts is admissible to complete the story of the crime on trial by proving its immediate context of happenings near in time and place.

***Commonwealth v. Lark***, 543 A.2d 491, 497 (Pa. 1988) (citations omitted).

Here, A.A. testified that on October 6, 2021, he called Appellant a "pedo" during an argument which enraged Appellant to the point that he struck A.A. with a metal spoon, causing significant injuries to A.A.'s face and mouth. Thus, the evidence was relevant to explain the sequence of events leading to the assault, as well as Appellant's motivation for committing the crime.

Even if the trial court erred in admitting the messages, the error would be harmless. The harmless error doctrine "reflects the reality that the accused is entitled to a fair trial, not a perfect trial." ***Commonwealth v. Hairston***, 84 A.3d 657, 671 (Pa. 2014).

> Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely

cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* at 672. Appellate courts may apply the harmless error doctrine *sua sponte* because "it does nothing more than affirm a valid judgment of sentence on an alternative basis." *Commonwealth v. Hamlett*, 234 A.3d 486, 492 (Pa. 2020).

Here, the properly admitted and uncontradicted evidence of guilt was so overwhelming, and the prejudicial effect of the error insignificant by comparison, that the error could not have contributed to the verdict. The evidence established that Appellant aggressively entered A.A.'s bedroom, assaulted A.A., and struck him with a spoon in his mouth. Immediately after being struck, A.A. observed blood all over himself and was in excruciating pain. He ran straight from his residence to the police station where Officer Shoemaker observed A.A.'s injuries, and A.A. provided a statement of what happened. A.A.'s mother also observed Appellant's injuries at the hospital and took A.A. to the dentist to remove his broken tooth. Additionally, A.A. testified that Appellant punched him repeatedly in the head the day before and threw a knife at A.A. at an unknown time prior. Thus, any error in the admissibility of the evidence was harmless.

B. **Knife throwing incident**

On April 25, 2023, the Commonwealth filed a motion *in limine* to introduce additional prior bad acts pursuant to Rule 404(b). **See** Commonwealth's Motion, 4/25/23. The Commonwealth asserted that while meeting with A.A. for trial preparation, he and his mother told the assistant district attorney of the knife throwing incident described above. On May 2, 2023, the day of jury selection, Appellant filed his objection to the Commonwealth's motion. **See** Defendant's Objection, 5/2/23.

Prior to jury selection, the trial court heard argument on the issue. The Commonwealth argued that the evidence was relevant and probative to prove course of conduct for the EWOC charge, as well as to negate any argument that the incident was an accident, self-inflicted or corporal punishment. N.T., Trial Vol I, at 7-8. Appellant argued that it was the first time he was learning of the knife throwing incident, and that it was not mentioned in any report received during discovery. **Id.** at 8-9. He further argued that there was no time frame for when the incident occurred nor a supplemental victim statement regarding the incident. **Id.** at 11.

The trial court granted the Commonwealth's motion and admitted the evidence as probative to prove course of conduct. **Id.** at 21. During A.A.'s testimony of the knife throwing incident, it was discovered that A.A. broadly referenced the incident during the preliminary hearing. N.T., Trial Vol II, at 113-120. At Appellant's preliminary hearing, A.A. testified that there was a prior physical incident with Appellant that left him bleeding. **Id.** at 122. No

further information about the incident was elicited at the time. A.A. testified at trial that he was referring to the knife throwing incident when he made that statement during the preliminary hearing. *Id.* He confirmed that he did not inform the Commonwealth of the specific details of the knife throwing incident until trial preparation. *Id.* at 123-24.

We agree with the trial court that testimony regarding the knife throwing incident was relevant to prove course of conduct and its probative value was outweighed by any prejudicial effect. Moreover, even though A.A. did not specifically reference the knife throwing incident during the preliminary hearing, he did reference a time where a physical incident with Appellant left him bleeding. Thus, the trial court did not abuse its discretion by admitting this prior bad act pursuant to Rule 404(b).

C. **Expert medical testimony**

On April 19, 2022, Appellant filed a motion *in limine* to preclude the Commonwealth from introducing "medical records, evidence or expert reports relative to the causation of injury in the instant matter." Defendant's Motion in Limine, 4/19/22, at ¶ 4. Appellant's motion was denied. At trial, the Commonwealth did not introduce any medical records or expert reports regarding the causation of A.A.'s injuries. Instead, A.A., his mother, and Officer Shoemaker provided lay witness testimony of A.A.'s injuries. Appellant did not object to the testimony at the time it was presented.

On appeal, Appellant contends that the trial court "improperly permitted lay testimony relative to medical causation of injury" in violation of Pa.R.E. 701.[3]  Appellant's Brief at 33.  He does not explain why the lay witness testimony was improper.  Nor does he provide authority which would require expert medical testimony in every case where there is an injury.  We find this issue waived due to Appellant's failure to preserve the issue for our review. *See* Pa.R.A.P. 302(a).  Moreover, Appellant's brief fails to provide any discussion or citation to any authority and fails to develop the issue in any meaningful way capable of review.  ***Johnson, supra.***

Even if the issue was not waived, Appellant is not entitled to relief.  The lay witnesses testified as to their observations based on their physical inspection of the injuries, which did not require scientific, technical or other specialized knowledge or expertise.  Thus, the trial court did not abuse its

_____

[3] Rule 701 governs opinion testimony by lay witnesses, and states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a)   rationally based on the witness's perception;
>
> (b)   helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c)   not based on scientific, technical, or other specialized knowledge within the scope of Rule 701.

Pa.R.E. 701.

discretion by allowing the testimony of the lay witness as expressly permitted by Rule 701.

### IV.    DISCRETIONARY ASPECTS OF SENTENCE

Lastly, Appellant challenges the discretionary aspects of his sentence. Specifically, he contends that the sentence is "based solely upon the severity of the alleged crime and [the trial court] must have assumed facts from the "prior bad act" evidence which was improperly admitted over objection." Appellant's Brief at 43.  "The trial court also impermissibly considered other alleged and uncharged crimes" and "fail[ed] to consider Appellant's past life, health habits and moral character."  ***Id.***

Challenges to the discretionary aspects of sentencing are not entitled to appellate review as a matter of right.  ***Commonwealth v. Clemat***, 218 A.3d 944, 959 (Pa. Super. 2019).  Rather, such challenges are considered petitions for allowance of appeal.  ***Id.***  Thus, an appellant must invoke our jurisdiction by satisfying a four-part test: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect pursuant to Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.  ***Id.***

Here, Appellant filed a timely notice of appeal, properly preserved the issue in his post-sentence motion, and his brief complies with Rule 2119(f).

Therefore, we must determine whether Appellant has raised a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

> A substantial question will be found where an appellant advances a colorable argument that the sentence imposed is either inconsistent with a specific provision of the Sentencing Code or is contrary to the fundamental norms which underlie the sentencing process. At a minimum, the Rule 2119(f) statement must articulate what particular provision of the code is violated, what fundamental norms the sentence violates, and the manner in which it violates that norm.

*Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014).

In his Rule 2119(f) statement, Appellant argues that his sentence was manifestly excessive and unreasonable. He contends that the sentence was "not supported by any facts which may properly have been considered" and "was based only upon the perceived seriousness of the offense to the exclusion of all other relevant factors." Appellant's Brief at 46. "[A] claim that a court did not weigh the factors as an appellant wishes does not raise a substantial question." *Zirkle*, 107 A.3d at 133. Accordingly, Appellant has failed to invoke our jurisdiction to review the discretionary aspects of his sentence.

Even if Appellant invoked our jurisdiction, no relief is due. We review a sentencing court's determination for an abuse of discretion:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its

judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Id.* at 132. A sentencing court must state its reason for the sentence on the record. 42 Pa.C.S.A. § 9721(b); ***Commonwealth v. Fowler***, 893 A.2d 758, 767 (Pa. Super. 2006). This can be satisfied by a trial court stating on the record that it reviewed the pre-sentence investigation report. ***Fowler***, 893 A.2d at 767. Our Supreme Court has stated:

> Where [a] pre-sentence report exists, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention in engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988).

Here, the trial court had the benefit of a presentence investigation and a batterers assessment when imposing the sentence. N.T. Sentencing 5/31/23, at 2-3. This alone satisfies the trial court's requirement to place its reasons for imposing a particular sentence on the record. ***Fowler, supra.*** Additionally, the trial court explained:

> [T]he facts that were accepted by the jury as to what occurred here amount to reprehensible conduct against a young man causing serious injuries, causing serious damage to not just him, but to his family, and to all the other people around you.
>
> Your record shows that you have engaged in conduct in your past that is indicative of something that does not show great judgment on your part.

N.T., Sentencing, at 17-18. Moreover, Appellant was sentenced within the standard range of his sentencing guidelines.[4] Accordingly, we find no error.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/22/2024

---

[4] Appellant was sentenced to an aggregate 52 to 104 months of incarceration – 40 to 80 months for EWOC and a consecutive 12-24 for simple assault. Appellant's prior score is RFEL. EWOC has an offense gravity score ("OGS") of 6; therefore, with a prior record score of RFEL, the standard range for EWOC was 27 to 40 months. Simple Assault has an OGS of 3; therefore, with a prior record score of RFEL, the standard range for simple assault was 12 months. Accordingly, Appellant's sentences fall within the standard ranges of the sentencing guidelines for each conviction.