**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Aldo POPOW, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 9, 2003.

Filed Feb. 18, 2004.

MaryJean Glick, Lancaster, for appellant.

Donald R. Totaro, Asst. Dist. Atty., Lancaster, for Com., appellee.

Before: KLEIN, BENDER and OLSZEWSKI, JJ.

KLEIN, J.

¶ 1 Aldo Popow appeals from the judgment of sentence entered in the Court of Common Pleas of Lancaster County. Popow challenges his sentence on two grounds: improper grading and improper imposition of restitution. We vacate and remand for resentencing.

¶ 2 Popow was convicted by a jury on various charges after an incident that occurred in the early morning hours of May 27, 2002. That morning, Popow went looking for his ex-girlfriend, Michele Pool, and the three children that he and Pool had together. Essentially, the episode occurred when Popow located Pool at her sister's apartment after his four-year old daughter had let him into the apartment. Pool and Kenneth Dorsey were engaging in sexual activity at that time. Popow picked up his four year-old daughter, and while Dorsey, Pool and Pool's friend, Stephanie White, tried to get the child from him, Popow fell down a flight of twelve stairs while holding the child. Next, there was an altercation between Popow, Dorsey, and Jaime Baeza–Guzman. Dorsey testified that Baeza–Guzman was holding Popow's arm behind back and that Popow had a box-cutter in that hand.

¶ 3 During the altercation, Baeza–Guzman suffered an injury to his right bicep, which required surgery. Popow was also injured when Dorsey hit him with a claw-hammer; he suffered a concussion and nasal fracture.

¶ 4 Following trial, the jury acquitted Popow of aggravated assault charges, but convicted him of simple assault (making a threat with a deadly weapon), defiant trespass, recklessly endangering another person, stalking, and endangering the welfare of a child. Popow was sentenced to a term of probation of probation for seven years. He was also sentenced to restitution in the amount of $12,212.17 for injuries sustained by Baeza–Guzman. Reconsideration was denied. This appeal followed.

¶ 5 Popow raises two issues on appeal: first, that he was improperly sentenced on endangering the welfare of children as a felony, where (a) neither the information nor the evidence made out a course of conduct that would raise this charge from

a misdemeanor of the first degree to a felony of the third degree and (b) where the jury was not instructed to make a finding on course of conduct; and second, that the trial court illegally imposed restitution for Jaime Baeza–Guzman's injuries, since Popow was acquitted of aggravated assault and simple assault for stabbing Baeza–Guzman. We agree with both arguments.

**1. Grading of endangering of children as a third-degree felony.**

¶ 6 The offense of endangering the welfare of children (EWC) is defined as follows:

(a) **Offense defined.**—A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

(b) **Grading.**—An offense under this section constitutes a misdemeanor of the first degree. *However, where there is a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.*

18 Pa.C.S.A. § 4304 (emphasis added). The information states that EWC was a felony of the third degree under 18 Pa. C.S.A. § 4304(b), but the facts in the Information did not allege any course of conduct. As Mr. Popow argues, the language in the Information described the first-degree misdemeanor. The Information reads:

Count 8—ENDANGERING WELFARE OF CHILDREN—18 Pa.C.S.A.

4304(a)(Felony 3) Did, being the parent, guardian, or other person supervising the welfare of a child by violating a duty of care, protection or support; To Wit: Actor entered a secured apartment without permission and holding his approx. 4 year old daughter, [C.L.] Popow while possessing a weapon and wrestling with the adult occupants of 572 Walnut St., Apt. B, Columbia, PA. Said offense occurred at 572 Walnut Street, Apt. B, Columbia, Lancaster County, Pennsylvania.

Further, the jury instruction did not ask the jury to consider whether the risk to the child constituted a "course of conduct." [1]

¶ 7 The facts presented at trial showed that the entire episode was one event on one night. The trial court analyzed the issue as one of sufficiency, concluding the jury could have found Mr. Popow's acts were "separate enough to establish a course of conduct." This disregards the lack of a factual basis in the information or evidence presented at trial to support this, and disregards the lack of a jury instruction on the issue.

¶ 8 In *Commonwealth v. Brown,* 721 A.2d 1105 (Pa.Super.1998), this Court interpreted other language in the EWC statute, stating: "The common sense of the community should be considered when interpreting the language of the statute." *Id.* at 1106–07 (citing *Commonwealth v. Mack,* 467 Pa. 613, 359 A.2d 770, 773 (1976)). It strains common sense to upgrade this event to a "course of conduct" when it probably took place in a matter of minutes. [2] Additionally, criminal statutes

---

**1.** In his brief, Popow observes that this is not surprising since subsection (b) of 18 Pa.C.S.A. § 4304 was added in 1995, and the standard instruction for EWC has not been revised since 1975.

**2.** The evidence at trial indicates Popow went to the apartment between 4:00 and 4:30 a.m. Officer Jack R. Brommer, Jr. averred in the criminal complaint that the Columbia Borough Police were dispatched at 4:54 a.m.

should be construed strictly in favor of the defendant. *See* 1 Pa.C.S.A. § 1928(b)(1). Particularly with this offense, the logical interpretation of the legislative language in subsection (b) is that it is designed to punish a parent who over days, weeks, or months, abuses his children, such as repeatedly beating them or depriving them of food. *See, e.g., Commonwealth v. Ressler,* 798 A.2d 221 (Pa.Super.2002) (offense of endangering the welfare of a child graded as third-degree felony where conduct occurred over a period of two years). The statute was clearly not designed for an event that occurs within minutes, or, perhaps in a given case, even hours.

▮ ¶ 9 The Commonwealth claims that any objection to the grading of EWC was waived because there was no objection to the jury charge. This argument fails for two reasons. First, the issue raises a question as to the legality of the sentence and it is therefore a non-waivable matter. *See Commonwealth v. Kisner,* 736 A.2d 672, 673–74 (Pa.Super.1999). Second, the jury charge, which did not include the additional "course of conduct" factor required for a conviction under section 4304(b), *was appropriate* for EWC as a misdemeanor of the first degree under section 4304(a). The jury instruction reads:

And the final charge is endangering the welfare of a child. The defendant has been charged with a crime of endangering the welfare of a child. In order to find the defendant guilty of the crime, you must find that each of the elements of the crime have been established beyond a reasonable doubt, and there are four elements: First, that the defendant endangered the welfare of the child by violating a duty of care. Two, the defendant ... endangered the welfare of the child knowingly. A person's conduct is knowing when he is aware that it is practically certain that this conduct will

cause a particular result. And, four, the child was under the age of 18 years at the time of the endangering. That part is established because she was four. If after considering all of the evidence you find that the Commonwealth has established beyond a reasonable doubt all of the elements which I have stated, you should find the defendant guilty of endangering the welfare of [the child].

(N.T. Jury Charge, 11/8/02 at 554.) There is no mention in the charge of "course of conduct."

¶ 10 Our recent decision in *Commonwealth v. Passarelli,* 789 A.2d 708 (Pa.Super.2001), is instructive. There, the Commonwealth had labeled the charge of EWC in the information as a felony of the third degree. The descriptive language in the information, however, clearly indicated that the charge was a misdemeanor of the first degree, as "it did not allege 'course of conduct.'" *Id.* at 714. The jury charge, which mirrors the charge in the instant case, reads:

In order to find him guilty of this offense you must find that each of the elements of the crime have been established beyond a reasonable doubt. There are four. One, that the defendant endangered the welfare of a child ... by violating a duty of care or protection to her. Two, that the defendant endangered the welfare of the child knowingly. As I've told you before, a person's conduct is knowing when he is aware that it is practically certain that his conduct will cause a particular result. Three, that the defendant at the time was a parent or guardian or person supervising the welfare of the child. And four, that the child was under the age of eighteen at the time of the conduct....

*Id.* Passarelli was convicted of EWC graded as a misdemeanor of the first degree, and he was sentenced accordingly.

¶ 11 Passarelli argued on appeal that the sentence was illegal because the offense was graded as a felony of the third degree in the information and, therefore, the court could not sentence him on a lesser graded offense. We disagreed, finding that the descriptive language alleged in the information and the acts proven, along with the jury instruction, controlled:

[I]f an erroneous grading is included in an information, the sentencing court is not bound to sentence according to the error, but may sentence in accordance with the *true grading of the crimes alleged and proven* .... [T]he trial court instructed the jury on the M–1 charge, the jury then found Passarelli guilty of EWC, and, accordingly, the trial court denied Passarelli's Motion for judgment of acquittal on the M–1 charge while granting Judgment of acquittal as to the F–3 charge. Based on our review of the record, we conclude that the jury understood that they found Passarelli guilty of EWC graded as a M–1.

*Id.* at 714 (emphasis added). Here, despite the erroneous grading in the information, the court was bound to sentence according to the true grading of the offense as alleged and proven, which was EWC as a misdemeanor of the first degree. Without an instruction, we cannot conclude that the jury understood that they were making a finding on course of conduct.

¶ 12 Thus, in order to be graded as a third-degree felony, the Commonwealth must allege in the information and present evidence at trial of the additional factor of "course of conduct," and the jury must be instructed on such. Here, "course of conduct" is not an element of the offense of endangering the welfare of a child, but it is an additional fact, a jury question, that impacts the grading of the offense. We cannot merely assume the jury found

this additional fact when no evidence of it was presented at trial and no mention of it was made in the jury's charge. *See Commonwealth v. Shamberger,* 788 A.2d 408 (Pa.Super.2001) (*en banc* ) (whether property was taken from the person is not an element of theft, but is a factor for grading purposes; this "factor" is a question for the jury); *see also Commonwealth v. Sparks,* 342 Pa.Super. 202, 492 A.2d 720 (1985) ("As to grading of ... offenses, it is clear that value becomes determinative and this, too, is a factual question, which has been regarded as a jury question, although it is not an element of the crime.").

¶ 13 We therefore conclude that the trial court improperly graded this offense as a felony of the third degree. We remand to the trial court for imposition of a sentence within the legal sentencing range and consideration of the sentencing guidelines of this crime as a misdemeanor of the first degree, rather than as a felony of the third degree.

## 2. The restitution order

¶ 14 The trial court imposed a sentence of restitution in the amount of $12,212.17 for the injuries sustained by Baeza–Guzman. Popow argues this was improper because he was acquitted of both aggravated assault and simple assault for the stabbing of Baeza–Guzman, and was convicted of simple assault under 18 Pa. C.S.A. § 2701(a)(3) ("attempt by physical menace to put another in fear of imminent serious bodily injury."). We agree with Popow that following the acquittal on the assault charges with respect Baeza–Guzman, the jury finding indicates that Popow was not directly responsible for the injuries to Baeza–Guzman. However, he could be held to be indirectly responsible for them. It is not certain from the jury's verdict whether Baeza–Guzman was cut accidentally during the scuffle, or whether

he was stabbed in self-defense because he was choking Mr. Popow. In either event, the illegal actions of Popow triggered the entire event and therefore he is indirectly responsible for the injuries.

¶ 15 The language of the sentence is as follows:

On Information No. 3026 of 2002, Count One, Simple assault, I am going to impose a two year period, no fine, but costs, and I am going to impose the restitution of $12,212.17. I am going to make that also consecutive.

The language does not impose the restitution as a condition of probation. *See* 42 Pa.C.S.A. § 9754. Despite the fact that this may be somewhat technical, under Pennsylvania law this is an imposition of restitution under 18 Pa.C.S.A. § 1106(a), which is improper when the injuries are an *indirect* rather than a direct result of the criminal activity. *See Commonwealth v. Reed*, 374 Pa.Super. 510, 543 A.2d 587 (1988) (defendant convicted of unlawfully receiving property taken in a burglary could not be ordered *as part of his sentence* under 18 Pa.C.S.A. § 1106(a) to make restitution for total loss sustained in the burglary; no evidence of a direct causal connection between total losses sustained and the defendant's role in receiving some of the property that was stolen); *see also Commonwealth v. Harner*, 533 Pa. 14, 617 A.2d 702 (1992) (restitution may be imposed only for those crimes to property or person where victim suffered loss that flows from conduct that forms basis of crime for which defendant is held criminally accountable); *Commonwealth v. Dohner*, 725 A.2d 822, 824 (Pa.Super.1999) (same).

¶ 16 Here, the injuries were not directly caused by the simple assault, since that conviction was for threatening conduct and placing others in fear. Restitution could be ordered, however, as a condi-

tion of probation. *See Harner, supra; see also In re M.W.*, 555 Pa. 505, 725 A.2d 729 (1999).

¶ 17 Statutory authority for imposing restitution as a condition of probation is found at 42 Pa.C.S. § 9754:

(a) General Rule.—In imposing an order of probation the court shall specify at the time of sentencing the length of any term during which the defendant is to be supervised, which term may not exceed the maximum term for which the defendant could be confined, and the authority that shall conduct the supervision.

. . . . .

(c) Specific conditions.—*The court may as a condition of its order require the defendant:*

. . . . .

(8) *To make restitution of the fruits of his crime or to make reparations, in an amount he can afford to pay, for the loss or damage caused thereby.*

42 Pa.C.S. § 9754(c)(8) (emphasis added). The sentencing court is accorded latitude in fashioning probationary conditions designed to rehabilitate the defendant and to provide some measure of redress to the victim. And, when restitution is imposed as a condition of probation, the required nexus is relaxed.

¶ 18 In *Harner, supra*, Mother was convicted on two counts of interference with custody of children. The trial court imposed a sentence directing Mother to pay restitution to Father for expenses incurred in locating the children. The Pennsylvania Supreme Court struck down the restitution order for Father's costs of an investigator and legal fees to track down his children after Mother had taken them from his custody. 617 A.2d at 706. However, it remanded the case to see if those costs were sustainable as a condition of

probation, and to determine what loss or damage had been caused and what amount Mother could afford to pay and how it should be paid, since that was not of record. *Id.* at 707. The Court also noted:

[C]onsistent with the broader discretion granted to a sentencing court that chooses to impose restitution as a condition of parole, 42 Pa.C.S § 9754(c)(8) vests the court with an equally broad power to determine what the fruits of the crime are. This is considerably different than the language of 18 Pa.C.S. § 1106 which permits restitution only for losses that are a direct result of the crime. The more liberal language of § 9754(c)(8) is understandable given the purposes of rehabilitation and can encompass all the types of claims Mr. Harner presented, as long as the trial court is satisfied that restitution is being ordered so that the appellant will understand the cruelty of her conduct, be deterred from repeating the conduct, be encouraged to live in a responsible manner, and be able to pay these costs.

*Id.* at 707 n. 3; *see also Commonwealth v. Kelly,* 836 A.2d 931 (Pa.Super.2003) (where defendant was convicted of receiving stolen property he could be ordered, as a condition of probation, to pay restitution in amount of repairs to victim's truck from which items had been stolen, even though he did not actually break into truck; where restitution is imposed a condition of probation, required nexus between crime and victim's damages is relaxed).

¶ 19 We conclude, therefore, that the court improperly ordered restitution as part of Mr. Popow's sentence under 18 Pa.C.S.A. § 1106(a) since the injuries were not directly caused by the simple assault for which he was held accountable.

¶ 20 Judgment of sentence vacated. Case remanded for resentencing in accordance with this decision. Jurisdiction relinquished.