J-S48038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARLIN ALAN BROWN, II | |
| Appellant | No. 333 WDA 2015 |

Appeal from the Judgment of Sentence of February 17, 2015
In the Court of Common Pleas of Fayette County
Criminal Division at No.: CP-26-CR-0000678-2014

BEFORE:  PANELLA, J., DONOHUE, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                    **FILED SEPTEMBER 18, 2015**

Marlin Alan Brown appeals his February 17, 2015 judgment of sentence.  We affirm.

The trial court summarized the history of this case as follows:

[Brown] was convicted by a jury of one count of Endangering the Welfare of Children[1] as the result of injuries to a child approximately six months of age.  [Brown] and the child's mother, [J.S. ("Mother")], are paramours who live together in a residence located [on] Farragut Street, Uniontown, Fayette County, Pennsylvania.  At the time of the incident, the parties were the parents of a two and [one-]half year old son, and [Mother] was also the parent of the injured child, although [Brown] was not.  The injured child was conceived during a break-up between [Brown] and [Mother,] but they reconciled and became a couple again shortly after the injured child was born.  At the time of trial, these parties had become the parents

_____

1        18 Pa.C.S.A. § 4304.

of a third child, and [Mother] did not want to testify against [Brown].

[Mother] initially noticed that the child had a split lip when [Mother] returned home from work on Sunday, September 8, 2013, and later that evening, while at a park, observed red marks on the child's neck that [Mother] believed then came from the child's car seat. However, on the morning of September 9, 2013, she saw that the child had a very swollen leg which caused [the child] to scream when [Mother] touched it. [Brown,] who is the child's step-father, had been the caretaker of the child during [Mother's] daylight work shift the previous day, September 8, 2013. When [Mother] inquired about the child's split lip, [Brown] told her that their son, who was two and [one-]half years old at that time, had thrown his sippy cup which hit the baby.

[Mother] took the baby to Uniontown Hospital where she spoke to a doctor and then to a Children and Youth Services caseworker and a police officer. The caseworker, Kevin Newton, testified at trial that he observed the child at Uniontown Hospital and took photos to document the injuries. He also spoke to the police officer and to both [Mother] and [Brown] concerning how the child came to have a fractured leg. [Brown] told Mr. Newton that the injury could have been caused by the parties' two and [one-]half year old son while [Brown] was upstairs in the bathroom. [Brown] also told Mr. Newton that he was doing some range of motion exercises with the baby's legs, and those exercises could have caused the injury. Mr. Newton checked with the child's pediatrician, Laurel Pediatrics, but the doctor and the staff members did not indicate that the child was in need of any such exercise. [Mother] then told Mr. Newton that the parties' son had some issues with his legs when he was a baby so she and [Brown] felt they should do the same exercises with this baby. She later called Mr. Newton to tell him that she might have caused the injury because she remembered that she had tripped and fallen on September 8, 2013, while she was carrying the baby.

Later on September 9, 2013, the baby was taken by [Mother] to Children's Hospital in Pittsburgh, where the child was seen by Dr. Janet Squires on September 10, 2103, as an inpatient. The doctor reviewed x-rays taken of the baby which revealed a fresh acute fracture of the child's right femur. Other x-rays also showed that there were three injured bones in the left leg, at

least one of which was older. The right femur, the thigh bone, showed an unusual break in that it occurred very high on the leg, almost in the hip, and was straight across. Doctor Squires gave her expert medical opinion that the fractures and the observable bruising on the child's neck were the result of physical abuse. Following his investigation which included observing the child, talking to [Mother] and [Brown], as well as to Dr. Squires, City of Uniontown Police Officer John Kauer filed charges against [Brown] of Endangering the Welfare of Children, Aggravated Assault, Simple Assault and Recklessly Endangering [Another Person. Brown] was found guilty of Endangering the Welfare of Children, but he was found not guilty on all the other charges.

Trial Court Opinion ("T.C.O."), 5/4/2015, at 1-3 (citations to notes of testimony omitted).

On February 17, 2015, Brown was sentenced for endangering the welfare of a child ("EWOC"), graded in this instance as a third-degree felony, to eleven and one-half months to twenty-three months in county jail. On February 24, 2015, Brown filed a notice of appeal. The trial court ordered, and Brown timely filed, a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On May 4, 2015, the trial court filed a Pa.R.A.P. 1925(a) opinion.

Brown raises the following three issues on appeal:

1. Whether the Commonwealth failed to present sufficient evidence that [Brown] knowingly endangered the welfare of the minor child?

2. Whether the Commonwealth failed to present any evidence that [Brown's] actions constituted a "course of conduct" at trial?

3. Whether the lack of a jury charge as to the additional "course of conduct" factor, required under 18 [Pa.C.S.A. §] 4304(b),

resulted in the imposition of an illegal sentence upon [Brown]?

Brown's Brief at 7.

Brown first challenges the sufficiency of the evidence to support his conviction.

> Our standard for evaluating sufficiency of the evidence is "whether the evidence, viewed in the light most favorable to the Commonwealth [as verdict winner], is sufficient to enable a reasonable jury to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Watkins**, 843 A.2d 1203, 1211 (Pa. 2003) (citing **Commonwealth v. Crews**, 260 A.2d 771, 771–72 (Pa. 1970)). "[T]he entire trial record must be evaluated and all evidence actually received must be considered, whether or not the trial court's rulings thereon were correct." **Commonwealth v. Harper**, 403 A.2d 536, 538–39 (Pa. 1979). Moreover, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." **Id.** at 538. "Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence." **Id.** at 539.

**Commonwealth v. Bryant**, 57 A.3d 191, 197 (Pa. Super. 2012) (citations modified).

Brown was convicted of EWOC which is defined as follows:

**(a) Offense defined. –**

> (1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

* * *

- 4 -

(3) As used in this subsection, the term "person supervising the welfare of a child" means a person other than a parent or guardian that provides care, education, training or control of a child.

**(b) Grading. –** An offense under this section constitutes a misdemeanor of the first degree. However, where there is a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

18 Pa.C.S.A § 4304.

The Pennsylvania courts have established a three-part test that must be satisfied to prove EWOC:

1) [T]he accused [was] aware of his/her duty to protect the child;

2) [T]he accused [was] aware that the child [was] in circumstances that could threaten the child's physical or psychological welfare; and

3) [T]he accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

***Commonwealth v. Pahel***, 689 A.2d 963, 964 (Pa. Super. 1997).

***Bryant***, 57 A.3d at 197 (citation modified).

Brown argues that the Commonwealth did not meet its burden of proving beyond a reasonable doubt that he was aware that the child was in circumstances that would threaten the child's well-being. Therefore, he concludes that the evidence was insufficient as a matter of law to sustain his conviction. Brown's Brief at 11-14.

In this case, Dr. Squires testified that the child had a fresh, acute femur fracture on the right leg. Notes of Testimony ("N.T."), 2/9-10/2015,

at 61. The fracture was unusual in that it was high up the leg, near the hip, and straight across. *Id.* at 63, 65. Dr. Squires testified that a break in that location had to have been caused by "a very traumatic event," such as a major car accident. *Id.* at 65. On the left leg, x-rays revealed older fractures to the femur, tibia, and metatarsal. *Id.* at 66-67. Dr. Squires opined that the injuries to the left leg were at least a week, but less than six weeks, old. *Id.* at 83.

Given the history that Dr. Squires received from Mother (*i.e.* that the child was fine on Saturday night, fussy when Mother returned from work on Sunday evening, and screaming with the swollen leg on Monday morning) and the knowledge that it can take twelve to twenty-four hours for a leg to swell after a fracture, Dr. Squires concluded that the fresh fracture to the right leg most likely occurred during the day on Sunday. *Id.* at 69-70, 72. Because the type of fracture was so unusual, Dr. Squires did not believe it would have been caused by a fall. *Id.* at 75. Nor did she believe that a young child could cause that type of break, unless the young child would have dropped the baby out of a window. *Id.* at 76.

Drawing all reasonable inferences from this testimony in the light most favorable to the Commonwealth, the leg fracture was a recent injury caused by a traumatic event, such as dropping the baby from a window or a major car accident. It most likely was caused on the Sunday when the child was left in Brown's care. Even if the jury concluded that Brown did not cause the injury himself, this was the type of injury that could not have occurred

without Brown's awareness. We have held that the failure of a caregiver to seek prompt medical attention when aware that a child has been injured is sufficient to prove the caregiver endangered the welfare of the child. *See Commonwealth v. Vining*, 744 A.2d 310, 323 (Pa. Super. 1999). Thus, we conclude that the evidence sufficed to prove that Brown endangered the child's welfare.

Brown next argues that the Commonwealth did not prove that his actions constituted a course of conduct such that EWOC could be charged as a felony. Essentially, Brown contends there was insufficient evidence of a course of conduct. Brown's Brief at 15.

As noted above, EWOC is graded as a third-degree felony if the Commonwealth establishes a course of conduct occurred that endangered a child. Otherwise, the crime is graded as a misdemeanor. 18 Pa.C.S.A. § 4304(b). We have held that:

> "[C]ourse of conduct" is not an element of the offense of endangering the welfare of a child, but it is an additional fact, a jury question, that impacts the grading of the offense. We cannot merely assume the jury found this additional fact when no evidence of it was presented at trial . . . .

*Commonwealth v. Popow*, 844 A.2d 13, 18 (Pa. Super. 2004). In *Popow*, we vacated a felony sentence because the entire incident leading to the EWOC conviction was a one-time event that took place "in a matter of minutes," which did not support a finding of a course of conduct. *Id.* at 16.

Here, however, Dr. Squires testified that some of the injuries were over a week old and possibly as much as six weeks old. Thus, there was sufficient evidence from which the jury could conclude that Brown engaged a course of conduct that endangered the child.

Finally, Brown argues that the trial court failed to charge the jury regarding the course of conduct, and therefore, precluded grading EWOC as a third-degree felony. Because Brown contends that the jury could make no such finding without a correct charge, he asserts that his sentence was illegal. Brown's Brief at 16.

In **Popow**, we held that "[w]ithout an instruction, we cannot conclude that the jury understood that they were making a finding on course of conduct." **Popow**, 844 A.2d at 18. Because in that case the trial court did not instruct the jury in addition to a lack of evidence regarding a course of conduct, we remanded for resentencing.

In this case, however, the trial court gave the following instruction:

Fourth, and last, [Brown] is charged with endangering the welfare of a child. In order to return a verdict of guilty to endangering the welfare of a child, the Commonwealth will need to establish beyond a reasonable doubt that [Brown] engaged in **a course of conduct** endangering the welfare of a child by violating some duty of care or protection; secondly, that he endangered the welfare of the child knowingly. In other words, that he was practically certain that his conduct would cause a particular result; third, at the time he was a person supervising the welfare of the child; and fourth that the child was under eighteen years of age. Each element needs to be established by the Commonwealth beyond a reasonable doubt.

N.T., 2/10/2015, at 8-9 (emphasis added). The jurors were told clearly that they could only convict Brown if the Commonwealth proved beyond a reasonable doubt that he engaged in a course of conduct that endangered the child's welfare. "The law presumes that the jury will follow the instructions of the court." **Commonwealth v. Spotz**, 896 A.2d 1191, 1224 (Pa. 2006). The jury was instructed correctly about the elements and we can conclude that the jury found that Brown engaged in a course of conduct. Therefore, there was no error in sentencing EWOC as a third-degree felony and Brown's sentence was not illegal.

Judgement of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2015