J-S02032-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
KENNETH ALBERT CAHILL :
:
Appellant : No. 552 EDA 2025

Appeal from the Judgment of Sentence Entered January 4, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0000004-2023

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED MARCH 12, 2026**

Kenneth Albert Cahill ("Appellant") appeals from the judgment of sentence of 6 to 14 months' incarceration followed by five years' probation imposed following his non-jury trial. Appellant presents challenges to the sufficiency of the evidence supporting the convictions and the trial court's rejection of his weight-of-the-evidence claim. We affirm Appellant's convictions but vacate his judgment of sentence and remand for resentencing.

Appellant was convicted of committing five sexual crimes against his biological daughter, M.C., when she was thirteen years old. M.C., who was fourteen at the time of trial, testified to the following. Appellant and M.C.'s mother, Jennifer McNamara, shared custody of M.C., with M.C. staying at Appellant's apartment every Friday and alternating weekends. On June 24, 2022, M.C. and Appellant were in Appellant's living room, while M.C. used her phone on the floor. Appellant "grabbed lotion and came up to [her] and

started touching [her] .... vagina." N.T. Trial, 9/15/23, at 13. Appellant touched her under her clothes. *Id.* Appellant asked, "does it feel good?" *Id.* at 14. At some point, M.C. and Appellant were on the couch, and he "touch[ed] [her] on [her] boobs[.]" *Id.* at 12.

M.C. informed McNamara by text that Appellant touched her. *Id.* at 15, 25. McNamara testified that M.C. asked to be picked up; McNamara called Appellant and he "said they were wrestling[.]" *Id.* at 26. McNamara called the police, who visited the apartment and took M.C. to the police station.

Appellant testified and related that on the incident date he and M.C. went to breakfast, played miniature golf, bought food for her pet lizard, and then returned to his apartment where he turned on the television. *Id.* at 39-40. During a news program, there was a story about a "guy who was trying to pick girls, little girls up on social media." *Id.* at 40. Appellant explained that he had a standing disagreement with M.C. over her extensive phone usage, *id.* at 38, and told her to pay attention to the news segment. *Id.* M.C. ignored Appellant and continued using her phone. *Id.* He then "went to grab her phone out of her hand," and she moved her arm in response, and he "touched her boob" accidentally. *Id.* Appellant later "tried to get the phone again off of her," and M.C. began "digging her fingernails into [his] arm," and in response Appellant "reached down and … put [his] hand on her thigh … and … squeezed her thigh[.]" *Id.* at 41. Appellant insisted that "the whole thing was about the phone" and that no sexual contact occurred. *Id.*

The trial court acknowledged the "two diametrically opposed stories" and that its "decision comes down to credibility." *Id.* at 57. The trial court deemed M.C. credible and found Appellant guilty of all five charges. Appellant filed timely post-sentence motions and a notice of appeal following their denial.[1] Appellant complied with the trial court's order to file a Rule 1925(b) statement. The trial court issued an opinion addressing his points of error and we now address the six issues presented for our review:

> I. Was the evidence insufficient to support finding Appellant guilty beyond a reasonable doubt on the charge of indecent assault - person less than 16 years age … ?
>
> II. Was the evidence insufficient to support finding Appellant guilty beyond a reasonable doubt on the charge of indecent assault - w/o consent of other …?
>
> III. Was the evidence insufficient to support finding Appellant guilty beyond a reasonable doubt on the charge of endangering welfare of children …?
>
> IV. Was the evidence insufficient to support finding Appellant guilty beyond a reasonable doubt on the charge of unlawful contact with minor - sexual offenses…?
>
> V. Was the evidence insufficient to support finding Appellant guilty beyond a reasonable doubt on the charge of corruption of minors - defendant age 18 or above …?
>
> VI. Did the trial court err and abuse its discretion by finding Appellant guilty on all charges, against the weight of the evidence, where Commonwealth witness, M.C., provided inconsistent testimony that lacked credibility?

---

[1] Appellant's original notice of appeal was untimely and he discontinued his appeal. His appellate rights were reinstated on February 13, 2025, and Appellant timely filed his notice of appeal within thirty days of that order.

Appellant's Brief at unnumbered 9-10 (unnecessary capitalization omitted and issues reordered for ease of disposition).[2]

Appellant's first five claims address the sufficiency of the evidence, with each claim corresponding to one of the five crimes. Our standard of review is well-settled.

> When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.

***Commonwealth v. Toomer***, 159 A.3d 956, 960–61 (Pa. Super. 2017) (internal citations and quotation marks omitted).

The typical sufficiency challenge addresses whether the Commonwealth's evidence established specific elements. ***See Commonwealth v. Evans***, 901 A.2d 528, 532 (Pa. Super. 2006) ("We must determine whether there is sufficient evidence to enable the fact finder to have found every element of the crime beyond a reasonable doubt."). However, for ease of readability, before addressing Appellant's separate issues, we first address Appellant's overarching argument based on the Commonwealth's asserted failure to establish any type of sexual contact

_____

[2] Appellant's brief fails to comply with the requirement that the pages of the brief "shall be numbered[.]" Pa.R.A.P. 2173. For ease of readability, all subsequent citations to Appellant's brief will omit the "unnumbered" designation. Additionally, for ease of reference, the cited page numbers shall refer to the physical page number of the brief; *i.e.*, we have not excluded the cover page or introductory tables as would be case under Pa.R.A.P. 2174.

occurred. ***See, e.g.***, Appellant's Brief at 31 ("Appellant argues that there was insufficient evidence to prove that the conduct occurred in the first place."). He therefore presents a challenge to the *actus reus*, i.e., proof of wrongful conduct. Black's Law Dictionary (12th ed. 2024) (defining "actus reus" as "The wrongful deed that comprises the physical components of a crime and that generally must be coupled with *mens rea* to establish criminal liability[.]").

The law is clear that "a solitary witness's testimony may establish every element of a crime, assuming that it speaks to each element, directly and/or by rational inference." ***Commonwealth v. Johnson***, 180 A.3d 474, 479 (Pa. Super. 2018) (emphasis omitted). Thus, "such testimony … may be sufficient to establish all the elements of a sexual offense." ***Id.*** (emphasis omitted). Thus, because the trial court credited M.C.'s version of events, the Commonwealth established that Appellant rubbed her vagina and groped her breasts. Additionally, M.C. testified that Appellant asked, "[D]oes it feel good[?]" after touching her vagina. N.T., 9/15/23, at 14. Because the trial court credited M.C.'s account, Appellant's claim that there was no *actus reus* fails.

Appellant attempts to circumvent this straightforward analysis by citing the well-settled principle that "testimony in conflict with the incontrovertible physical facts and contrary to human experience and the laws of nature must be rejected[.]" Appellant's Brief at 7 (quoting ***Commonwealth v. Santana***, 333 A.2d 876, 878 (Pa. 1975)).

To establish that this principle applies, Appellant first avers that M.C.'s testimony contradicted her own account. The relevant testimony supporting this argument concerns M.C.'s testimony as to where she was located when Appellant touched her. Appellant points out that, in response to the Commonwealth's question of "where you were sitting when that happened," M.C. replied that she and Appellant were "[o]n the couch." N.T., 9/15/23, at 12. In his view, M.C. immediately contradicted that testimony, citing the following exchange:

Q. Okay and how did your dad -- did he say anything to you before he started touching you?

A. He said that he was just playing around.

Q. Okay and how did he start to touch you? Did he --like how did it all begin?

A. He just -- so before that I was on the ground, like on my phone and he like grabbed lotion and came up to me and started touching me down on my private area.

*Id.* at 13.

Next, Appellant argues that M.C.'s "inability to recall anything from the date in question, aside from the alleged assault, is contrary to human experience." Appellant's Brief at 22. Appellant then compares M.C.'s testimony to his own.

This was not a date in which [M.C.] and Appellant hung around the house and watched television all day; [M.C.] had actively been participating in activities with Appellant directly prior to the time of this alleged indecent contact. Again, this does not track with how the human mind works. [M.C.] should have been able to testify to the entirety of the day's events, and the fact that she could not calls into question the whole of her testimony. The

- 6 -

testimony provided by [M.C.] does not portray the same sequence of events as the only other person who was physically present for this alleged incident - Appellant.

Appellant's Brief at 35 (citation to transcript omitted).

Beginning with Appellant's allegation that the "incontrovertible facts" require rejection of M.C.'s testimony, the only case cited by Appellant deeming evidence insufficient based on this theory is *Santana*, in which our Supreme Court discharged a drug offense conviction due to insufficient evidence of possession. Police officers were serving a search warrant targeting Santana's father and, as officers entered the side door, a voice shouted Santana's name. *Id.* at 878. Police Officer Yost testified that he saw Santana run from the second-floor apartment. *Id.* The police thereafter broke the lock to the apartment and found large quantities of drugs. *Id.* The Court held that while Officer Yost's testimony indicated that he saw Santana flee from that apartment, "the undisputed physical facts seem to refute this statement." *Id.* The Court noted that the officer testified "that he did not see [Santana] close the door or secure the lock after leaving the apartment. However, it was conceded that the door was in fact locked with a 'dead lock' which required a key to either open or close it." *Id.* Additionally, the evidence established that Santana lived on the third floor with his wife and son, and the stairway Santana used while running "provided a common access to the second and third floor apartments." *Id.*

Unlike *Santana*, this case involves no comparable physical impossibility. Appellant argues: "Unless [M.C.] possesses some superpower

that Appellant is unaware of, there is no possible way for her to have been on the couch with her father when the touching occurred, while simultaneously being on the floor with her father when the touching occurred." Appellant's Brief at 22. This sarcasm dramatically overstates the alleged contradiction in M.C.'s account. Appellant is correct that M.C.'s initial answer to the Commonwealth's direct examination started with her discussing Appellant touching her breasts on the couch, but the question posed simply asked M.C. if "something happen[ed] that day that brings us into court today?" *See* N.T., 9/15/23, at 12. M.C. was not asked to testify as to any specific sequence of events. In fact, the follow-up exchange quoted by Appellant reflects that M.C. states, "so **before that** I was on the ground … and [Appellant] came up to me and started touching me down on my private area." *Id.* at 13 (emphasis added). The "before that" appears to be referencing Appellant touching her breasts, as testified to on the preceding page of the transcript. This is far from a case like *Santana*, where the Commonwealth's own uncontradicted physical evidence regarding the locked apartment door made it impossible for Officer York's testimony to be true. We therefore disagree that this is a case where M.C.'s testimony conflicts with human nature or incontrovertible facts. *See also Commonwealth v. Booterbaugh*, 2067 MDA 2019, 2020 WL 6336007, *1 n.1 (Pa. Super. filed October 29, 2020) (unpublished memorandum) (describing *Santana* and this principle as applying to cases "where the testimony by the Commonwealth's witnesses was wholly belied by

other evidence and/or logic").[3]   Indeed, unlike **Santana** any purported "contradiction" regarding the facts comes from the same source.  Thus, any inconsistency in that regard was subject to the trial court's prerogative to credit or discredit M.C.'s account as it saw fit.  "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony."  **Commonwealth v. Lee**, 956 A.2d 1024, 1029 (Pa. Super. 2008) (citation omitted).  The trial court was free to determine that M.C.'s overall account accusing Appellant of sexual abuse was not undermined by any minor discrepancies or failure to recall what happened earlier that day.

Having rejected the argument that the Commonwealth failed to prove any sexual contact occurred, we now turn to Appellant's specific challenges to individual elements of the crimes.

<u>Indecent assault – complainant under sixteen years old</u>

The trial court convicted Appellant of two counts of indecent assault. Appellant's first issue concerns the conviction under 18 Pa.C.S. § 3126(a)(8), requiring proof that Appellant had "indecent contact" with a person under sixteen years old and that Appellant is "four or more years older" than M.C. Appellant challenges the element of "indecent contact," defined as "Any

---

[3]   **See** Pa.R.A.P. 126(b) (authorizing citation for persuasive value to unpublished non-precedential decisions of the Superior Court filed after May 1, 2019).

touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

In a variation of his overarching sufficiency challenge, Appellant argues that "the vague nature of [M.C.'s] testimony calls into question the ability to prove, beyond a reasonable doubt, that indecent contact occurred." Appellant's Brief at 19. "Specifically, [M.C.] could not remember nearly anything that preceded this alleged assault." *Id.* Alternatively, Appellant maintains that "even if [M.C.]'s sequence of events is to be believed, [M.C.] herself indicates that Appellant grabbed a bottle of lotion prior to any alleged touching" of her vagina. *Id.* Appellant argues that there "is no further clarification as to the extent of the touching or the location of the touching; just vaguely the 'outside' of the vagina," and "if perhaps a massage was being given with this lotion, there has not been sufficient evidence to establish that this touching was intentional, or meant for the purposes of gratification." *Id.* He therefore submits the Commonwealth failed to prove "indecent contact" with M.C.

These arguments address the weight to be given M.C.'s testimony, not its evidentiary sufficiency. M.C.'s testimony was clear that Appellant touched her vagina under her clothes and also touched her breasts. Appellant also asked M.C. "does it feel good?" N.T. Trial, 9/15/23, at 14. This establishes that Appellant touched an intimate part of M.C.'s body for purposes of sexual gratification.

As to the argument that M.C.'s testimony does not rule out that "perhaps a massage was being given with this lotion," Appellant does not address the obvious point that a legitimate massage does not involve touching a teenager's vagina. The trial court could rationally infer Appellant did so for sexual reasons. *See Commonwealth v. Brown*, 52 A.3d 1139, 1164 (Pa. 2012) ("[T]he ultimate question of evidentiary sufficiency ... [is] whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.") (quotation marks and citation omitted). We therefore conclude that the evidence was sufficient to sustain this charge.

<u>Indecent assault without consent</u>

The Commonwealth separately charged Appellant with one count of violating 18 Pa.C.S. § 3126(a)(1), which required proof that Appellant engaged in "indecent contact" with M.C. and did so without M.C.'s consent.

Appellant's argument regarding this conviction is virtually the same as the foregoing. Appellant's Brief at 24 ("[T]he argument relating to this instant charge will be identical to the previous argument relating to Indecent Assault - Person Less 16 Years Age."). Appellant repeats his arguments that the "testimony of [M.C.] must be placed aside as the testimony was neither in line with human nature, nor the laws of nature. Additionally, Appellant argues that there has been no substantial proof indicating that any alleged touching occurred for the purpose of sexual arousal or gratification." *Id.* Our foregoing analysis disposes of these arguments, and no relief is due.

<u>Endangering welfare of children</u>

Appellant's third issue addresses his conviction for endangering welfare of children ("EWOC"), which is defined as follows:

**(a) Offense defined.--**

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

. . . .

**(b) Grading.--**

(1) Except as provided under paragraph (2), the following apply:

(i) An offense under this section constitutes a misdemeanor of the first degree.

(ii) If the actor engaged in a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

18 Pa.C.S. § 4304.

Appellant's argument jointly addresses both the sufficiency of the evidence under paragraph (a) and the grading of this offense under paragraph (b). We address each in turn.

First, as to sufficiency of the evidence, Appellant again in substance challenges the weight to be given M.C.'s testimony. Appellant argues that M.C. agreed on cross-examination that Appellant was concerned over her phone usage, and that "Appellant clarified that his concern, on June 24th, 2022 was spurred by a news broadcast about the dangers of teens being online." Appellant's Brief at 28. Additionally, Appellant states: "Although

[M.C.] misinterpreted the events that follow, it is clear from the record that Appellant's concerns over [M.C.'s] phone usage actually *supported* the duties of care, protection, and support that Appellant had towards [M.C.]." ***Id.*** This "misinterpretation" requires viewing the evidence in a light most favorable to Appellant, not, as required by law, the Commonwealth. ***Toomer***, 159 A.3d at 961. Accordingly, this argument fails.

Turning to the grading of this charge, we conclude that Appellant is entitled to sentencing relief as the conviction must be graded as a misdemeanor of the first degree.

In ***Commonwealth v. Popow***, 844 A.2d 13, 17 (Pa. Super. 2004), we held that the enhanced felony grading for this crime implicates the legality of the sentence imposed. However, the analysis implicates sufficiency principles in that a factual finding regarding a "course of conduct" is necessary to support that felony grading. We held that the Commonwealth "must allege in the information and present evidence at trial of the additional factor of 'course of conduct,' and the jury must be instructed on such." ***Id.*** at 18. In ***Popow***, the information failed to do so and Popow failed to object. ***Id.*** Because the grading issue implicated legality of sentence, we rejected the Commonwealth's argument that Popow waived his challenge. ***Id.*** We then concluded the felony grading could not stand, as we could not "merely assume the jury found this additional fact when no evidence of it was presented at trial and no mention of it was made in the jury's charge." ***Id.***

Here, the criminal information generically charged the felony offense and did not specify what would qualify as a "course of conduct." Appellant did not object to the criminal information, and, because this was a bench trial, there was no opportunity for Appellant to object to a defective jury instruction. *See Commonwealth v. Akhmedov*, 216 A.3d 307, 320 (Pa. Super. 2019) ("In non-jury trials, we presume the court is imbued with the knowledge of the law that he would have given in a formal charge in a jury case.") (quotation marks and citation omitted).

The non-jury trial posture makes review difficult in that the relevant facts supporting the "course of conduct" are not ascertainable due to the combination of no jury charge, the generic criminal information, and the lack of a trial court opinion addressing this specific issue. In these circumstances, we opt to address the theory advanced by the Commonwealth in its brief, which addressed the arguments raised in Appellant's brief.

Both parties cite M.C.'s brief testimony that this was not the first time Appellant inappropriately touched her as the basis for a "course of conduct." We reproduce the relevant testimony.

> Q. Okay and I might have asked this already, I'm sorry if I, if I did, was it the first time that happened?
>
> A. No.
>
> Q. What happened on a different time?
>
> A. He liked, he kept touching my thighs and like moving his hand closer, but he never really got to the point where he would touch me like on my vagina.
>
> Q. Okay and do remember how old you were when that happened?

- 14 -

A. No.

Q. Okay, was it within the same year or more than a year before?

A. More than a year before.

N.T., 9/15/23, at 16.

The Commonwealth submits that this testimony "establishes an initial indecent assault which makes the events of June 24, 2022 a second event that establishes a course of conduct." Commonwealth's Brief at 12. In its view, Appellant engaged in a "course of conduct in grooming and molesting his daughter[.]" *Id.*

We disagree that this evidence suffices to establish a "course of conduct of endangering the welfare of a child" as required by the statute. The *Popow* Court stated in *dicta* that the language "is designed to punish a parent who over days, weeks, or months, abuses his children, such as repeatedly beating them or depriving them of food." *Popow*, 844 A.2d at 17. While this case does not involve that kind of abuse allegation, the logical conclusion is that the "course of conduct" for this type of sexual case must include a sexual component to qualify as a "course of conduct." Here, the relevant testimony was fleeting and the Commonwealth failed to ask any questions to develop this allegation. It is not clear from M.C.'s testimony if this prior contact was incidental to some other activity. We agree that her testimony that Appellant "kept touching my thighs and like moving his hand closer" could, in a proper case, amount to a sexual act and thus qualify as a "course of conduct." Unlike the June 24, 2022 incident, however, M.C. did not testify to any additional

- 15 -

circumstantial evidence of intent, such as any statements by Appellant or the manner of touching. Because this testimony is so scant, we agree with Appellant that it does not qualify as a prior event for purposes of establishing a sexual "course of conduct."

Furthermore, while not dispositive, we note that the Commonwealth had, in fact, previously asked M.C. if the June 24, 2022 incident was the first time Appellant abused her. N.T., 9/15/23, at 8 ("Q. Was this the first time that happened? A. Yes."). In context, M.C.'s subsequent testimony, *see* N.T., 9/15/23 at 16, may simply have meant that, in retrospect, she views Appellant's earlier conduct differently based on the subsequent events.

Given the paucity of information regarding this alleged "course of conduct" based on the Commonwealth's failure to ask follow-up questions, we agree with Appellant that the felony grading cannot stand. Therefore, consistent with ***Popow***, we must vacate the judgment of sentence for EWOC and remand for resentencing on the misdemeanor grading of the offense. ***See Popow***, 844 A.2d at 18.

<u>Unlawful contact with a minor</u>

Section 6318 of the Crimes Code prohibits the following:

**(a) Offense defined.**--A person commits an offense if the person is intentionally in contact with a minor, or a law enforcement officer acting in the performance of duties who has assumed the identity of a minor or of another individual having direct contact with children, as defined under 23 Pa.C.S. § 6303(a) (relating to definitions), for the purpose of engaging in an activity prohibited under any of the following provisions under this title, and either

- 16 -

the person initiating the contact or the person being contacted is within this Commonwealth:

> (1) Deleted by 2025, June 27, P.L. 6, No. 5, § 2, effective in 60 days [Aug. 26, 2025].

> (1.1) Any of the offenses enumerated in Chapter 30 (relating to human trafficking), if the activity involved sexual servitude and the victim was a minor.

> (1.2) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

> (1.3) Incest as defined in section 4302(b) (relating to incest).

> (1.4) Endangering welfare of children as defined in section 4304(a)(1) (relating to endangering welfare of children), if the activity involved sexual contact with the minor.

18 Pa.C.S. § 6318.

Appellant argues that he was not accused of incest and thus only (1.2) and (1.4) could apply.[4] He then repeats arguments we have previously rejected. *See* Appellant's Brief at 31 ("Appellant argues that there was insufficient evidence to prove that the conduct occurred in the first place. Appellant refers to his prior arguments for the underlying charges, which should be viewed as set forth at length within this subsection."). We thus rely on our earlier discussion of those points and conclude that our analysis upholding the other Chapter 31 convictions sufficed to establish Appellant's guilt under Section 6301(a)(1.2).

<u>Corruption of minors</u>

_____

[4] The criminal information generically charged Appellant with violating paragraph (a) and did not allege any particular set of facts.

Appellant's final sufficiency challenge addresses his felony conviction for corruption of minors. The statutory language reads:

> Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S. § 6301(a)(1)(ii).

Appellant challenges the "course of conduct" element, and repeats his argument concerning the failure to establish the "course of conduct" factual finding. Appellant's Brief at 32 ("Appellant has argued that no such course of conduct occurred in relation to the grading of the Endangering Welfare of Children charge, and presents that same argument for the Corruption of Minors conviction."). Appellant also "emphasizes that course of conduct constitutes an *element* of the corruption of minors offense, meaning that a failure to support a course of conduct would result in insufficient evidence for the entirety of the instant charge." *Id.*

Regarding "course of conduct", in **Commonwealth v. Kelly**, we explained that

> one of the additional elements in subsection (a)(1)(ii) is that "any course of conduct" requires proof of more than one act, whereas subsection (a)(1)(i) only requires a single act. Furthermore, subsection (a)(1)(ii) requires that the "course of conduct" alleged must constitute one or more Chapter 31 offenses. Thus, the first provision of subsection (a)(1)(i) is a lesser included 'offense' of the 'offense' defined by the first part of subsection (a)(1)(ii).

*Commonwealth v. Kelly*, 102 A.3d 1025, 1033 (Pa. Super. 2014) (*en banc*).

In *Kelly*, we concluded that a single act of grabbing a person's genitals could not constitute a "course of conduct." While that phrase is not statutorily defined, we examined its application in several other contexts, including EWOC, and concluded that it "imposes a requirement of multiple acts over time, in the same manner in which the term is used in the harassment, stalking and EWOC statutes." *Id.* at 1031.

As Appellant recognizes, this statute differs from EWOC in that "any course of conduct" is an element of the crime rather than a component of grading. Our analysis thus differs from the prior issue because we need not rely on any specific factual findings to support our analysis. Instead, we simply address whether, under the familiar sufficiency principles, the Commonwealth established a "course of conduct." We conclude that it did.

Appellant repeats his argument as to the prior incident not qualifying as a prior act for "course of conduct" purposes. However, because we need not look to any specific factual finding or specific theory alleged by the Commonwealth to support that factual finding, we rely on the fact that M.C. testified to two separate incidents: Appellant rubbing her vagina and then, separately, groping her breasts. Addressing this statutory language, we held in *Kelly* that a "course of conduct" includes "[a] pattern of actions composed of more than one act over a period of time, **however short**, evidencing a continuity of conduct[.]" *Id.* at 1030 (quoting 18 Pa.C.S. § 2709.1(f) (emphasis added)). Therefore, we need not rely on the testimony regarding

Appellant's touching a year before the instant incidents, and these two separate incidents satisfied the elemental requirement for a "course of conduct." No relief is due.

### Weight of the evidence

Appellant's final issue asserts that the trial court erred in denying his weight-of-the-evidence claim. "A trial court sitting as fact-finder is unlikely to find, in response to a post-sentence motion, that it reached a verdict contrary to the evidence." *Commonwealth v. Banniger*, 303 A.3d 1085, 1095 (Pa. Super. 2023) (citation omitted). We nonetheless apply the same standard of review as in a jury trial case, and review the trial court's ruling under the following principles:

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.
>
> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.
>
> Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a

proper exercise of discretion conforms to the law and is based on the facts of record.

***Id.*** (quoting ***Commonwealth v. Arnold***, 284 A.3d 1262, 1277 (Pa. Super. 2022)).

The trial court set forth its rationale for denying Appellant's weight claim in its opinion as follows:

> In the current case, this [c]ourt observed the demeanor of each of the witnesses and assessed the credibility of the witnesses during both direct and cross examination. Based on the evidence and testimony presented at trial, this [c]ourt found [Appellant] guilty. As a matter of law, the evidence presented in this case was sufficient to establish [Appellant's] guilt beyond a reasonable doubt. For a challenge to the weight of the evidence to be successful, the evidence must be so vague, tenuous, and uncertain that the verdict shocks the court's sense of justice.
>
> The guilty verdict in this case is not shocking, nor is it unjust. The verdict demonstrates that this [c]ourt accepted the testimony of the victim and her mother as true while finding [Appellant's] testimony untrue.

Trial Court Opinion, 8/23/24, at 13-14 (citation omitted).

Because the trial court passed on the credibility of the witnesses in the first instance, Appellant "essentially asks this Court to reassess his credibility, find his testimony credible, and then conclude his testimony more persuasive" than A.C.'s testimony. ***Commonwealth v. Salinas***, 307 A.3d 790, 795 (Pa. Super. 2023). We may not do so, and we discern no abuse of discretion in the trial court's rejection of his weight claim.

Convictions affirmed. Judgment of sentence vacated. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>3/12/2026</u>